THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
WILLIAM ADAMS, Appellant.

First Department, November 18, 1982

APPEARANCES OF COUNSEL

*Irving Cohen* for appellant.

*Anne Beane Rudman* of counsel (*Amyjane Rettew* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

#### OPINION OF THE COURT

SANDLER, J.

The defendant was convicted after a jury trial of murder in the second degree and sentenced to an indeterminate term of 25 years to life.

The homicide occurred on the evening of March 3, 1980, at 142nd Street and Lenox Avenue in New York County. Two young women, Angela Dortch and Jill Smith, passengers in a vehicle driven by the deceased, testified that they observed a man standing by the car while it was parked near a streetlight. They observed the man say something to deceased, who lowered the driver's window. The man then fired a shot through the window, causing the death of the driver.

The two witnesses described the shooter, with minor variations in terminology, as a light-skinned black male with a red beard and reddish hair. Some four days later, on March 7, 1980, they identified the defendant as the shooter in a lineup conducted in the District Attorney's office in the presence of defense counsel, and they again identified him at the trial.

The trial evidence was clearly sufficient to support the jury verdict, and the few trial errors urged on this appeal are without merit.

The principal issue on this appeal is presented by the defendant's challenge to the hearing court's determination that neither the lineup itself, nor the identification procedures preceding and attending it, were impermissibly suggestive. Of the several questions presented on this appeal, the single one that divides this court concerns the hearing Judge's determination that the lineup itself was fairly composed and not impermissibly suggestive. On the basis

of two one-word affirmative answers to leading questions by one of the identifying witnesses, our dissenting colleagues have concluded that the defendant was the only person in the lineup with red hair and that, accordingly, the lineup was fatally flawed.

Although differing in some respects among ourselves in the assessment of the pertinent events, the majority of this court have concluded that the appeal should be held in abeyance and the matter remanded for a reopened suppression hearing to permit additional testimony as to whether the lineup itself was a fair one. In an extended hearing, marked by detailed and exhaustive questioning by defense counsel addressed primarily to other issues, we find the relevant evidence on the issue that divides the court too sparse, unclear and ambiguous to permit a satisfactory resolution of the question.

That evidence may be briefly summarized. It includes first a black and white photograph of the lineup introduced by the People during the testimony of their single hearing witness, the detective assigned to the case. Although the photograph satisfactorily established what would be a fair lineup except for the idiosyncratic nature of the defendant's hair, and further shows at least one person in the lineup other than the defendant with light skin and light hair, the photograph obviously does not permit a determination as to whether the defendant was the only person in the lineup with red or reddish hair.

The only other relevant evidence at this extended hearing is found in the two one-word answers by one of the identifying witnesses, Jill Smith, to leading questions put to her by defense counsel who had called her as a witness, and which were elicited in the course of an attempted impeachment of her hearing testimony on the basis of an essentially false statement that she had given to a defense investigator. When these answers are examined in context and considered together with the rest of her testimony, a substantial question is raised as to whether she had correctly understood the meaning of the questions and whether the literal meaning of the answers was the intended meaning.

What is peculiarly troublesome about the obviously unsatisfactory nature of the relevant evidence on the issue that concerns us is the fact that the lineup was conducted under circumstances that make it certain that there was readily available to both parties far more authoritative, precise and indeed dispositive evidence on the issue than any adduced at the hearing. Indeed, it is difficult to see how a genuine factual issue could have developed with regard to the composition of the lineup.

The lineup was conducted in the District Attorney's office in the presence of defense counsel, the Assistant District Attorney assigned to the case, the arresting detective, a paralegal assistant in the District Attorney's office, and the defendant. All of these had a more extended opportunity to observe the lineup than any identifying witness, and had far more reason to observe it from the standpoint of its possible suggestiveness and to remember what was observed. None of these testified at the hearing except the detective, who was not asked a question about the lineup composition by either lawyer.

Moreover, it seems highly probable, although the record does not explicitly so state, that the participants in the lineup were known persons who could have been called for the direct observation of the hearing Judge at the request of either party if any relevant doubt as to their appearance was perceived.

The reason or reasons for the difference between the skimpy, unsatisfactory evidence on this issue adduced at the hearing, and that available to both parties, cannot be fixed with certainty. What seems clear, however, is that the Assistant District Attorney had no reason to believe at the beginning of the hearing that the fairness of the lineup's composition would be put in issue by a defense lawyer who was present at the lineup and offered no objection at that time.

Nor did anything occur during the presentation of the People's case to alert the Assistant District Attorney that the fairness of the lineup was in issue. The single witness called on the People's case was the arresting detective who had participated in the formation of the lineup and was

present throughout the several identifications. In a detailed cross-examination addressed entirely to other matters, defense counsel did not ask one question relevant to that issue although the witness was far more likely to have had an accurate recollection of the relevant facts than any single identifying witness and was not likely to give intentionally false testimony about the composition of a lineup attended by both defense counsel and the Assistant District Attorney.

Of equal significance is what defense counsel said, and did not say, in the course of several lengthy colloquies with the hearing court during the cross-examination of the detective. In these colloquies counsel presented at length his views of the issues presented at the hearing. He gave no intimation that the suggestiveness of the lineup was an issue.

The first possible inkling that the District Attorney might have had that such an issue was presented occurred when Jill Smith, during the defendant's case, gave the two one-word answers on which the dissenters rely. The thesis of the dissenters is that the District Attorney was obligated to rebut those answers, and that in default of such rebuttal the answers of the witness must be accepted according to their literal tenor and given decisive significance. Although not implausible, this overlooks several substantial possible explanations for the failure to rebut which are suggested by the record.

The Assistant District Attorney may well have understood the witness to have said, or to have intended to say, that she had told the defendant's investigator that the defendant was the only person with red hair in the lineup, not that this was the fact, which was indeed the interpretation apparently given by the seasoned and experienced Trial Judge. Alternatively she may have concluded that in any event these answers were of insufficient probative force to raise a genuine issue in light of the totality of the circumstances, including: defense counsel's failure to object at the time of the lineup; his failure to put any question on the subject to the arresting detective, or indeed to the other identifying witnesses he thereafter called, Angela Dortch, the second eyewitness, and Chris Brooks, owner of

the vehicle, who identified the defendant as someone he had encountered previously; and the fundamental improbability that the hearing would have been conducted as it was by a lawyer present at the lineup if he knew as a matter of personal observation that the lineup was suggestive. Finally, the District Attorney may have concluded most reasonably from the hearing court's response to defense counsel's arguments at the end of the defendant's case, in support of an application to call additional witnesses, during which he made a passing reference to the defendant being the only person with red hair in the lineup, that the hearing court had already determined that there was no merit to any of the defendant's contentions.

Whatever may be the reason, the controlling fact remains that the evidence adduced on the issue that divides us is inadequate to permit a satisfactory resolution.

As already noted, the hearing began with the calling by the District Attorney of the single witness presented by the People, Detective Naughton, the detective assigned to the investigation. On direct examination he briefly outlined the progress of the investigation from the time he was assigned through the identifications of the defendant at the lineup. He testified that he interviewed the witnesses on the night of the homicide; that they described the shooter as a male black with reddish complexion, reddish hair and a red beard; that he was told by a brother officer that the description fitted the defendant, a person known in the neighborhood; that he put together folders with six black and white photographs of bearded black males, including the defendant, which he exhibited to the eyewitnesses; that Angela Dortch identified the photograph of the defendant and Jill Smith was unable to make an identification; and that on March 6, 1980 he arrested the defendant, who was then beardless.

The detective further testified to the identifications of the defendant at the lineup in the District Attorney's office and the procedures that were used. It was brought out that in an effort to mitigate what was perceived as a height difference between the defendant and other stand-ins, the defendant stood on a telephone book during the period of the identifications, with the lineup so arranged that the

identifying witnesses could not perceive that he was so standing.

During the course of his direct examination there was introduced in evidence the black and white photograph of the lineup already described previously. One additional comment with regard to the photograph seems pertinent. Clearly it does not permit a determination as to whether or not the hair of the light-skinned person with light hair standing next to defendant was reddish. On the other hand, neither the photograph nor any evidence adduced at the hearing is informative as to the precise shading of defendant's red hair, something known to the hearing Judge from direct observation, but not to us. If the defendant's hair was a bright or flaming red, the absence from the lineup of anyone else with red or reddish hair, if that were the fact, would be persuasive that the lineup was unfairly suggestive under all the circumstances. But common observation establishes that there are shadings of red hair which are not significantly different from light or blond hair. If that were the fact, which we cannot determine on this record, a very different issue as to suggestiveness might well be presented even if the dissenter's view of the record were to be accepted. (Cf. *United States v Sanders,* 626 F2d 1388, 1389; *United States ex rel. Pella v Reid,* 527 F2d 380, 384.)

Defense counsel called on the defendant's case the three witnesses who had identified defendant at the lineup: Jill Smith, Angela Dortch and Chris Brooks. During an extended examination, in effect a cross-examination, Jill Smith staunchly maintained that she had seen the person who had fired the fatal shot, had described him to the investigating police officers, and had identified the defendant on the basis of her recollection of the events. In connection with an objection to the relevance of a question he had put, counsel informed the court that he was in possession of a taped statement which Jill Smith had given to a defense investigator which totally contradicted everything she had testified to during the hearing.

He then proceeded to question the witness as to whether she remembered the visit, which she did, and whether she remembered having made certain statements to the inves-

tigator. The witness remembered having made certain statements and not others. A time came when she answered that she did not remember telling the investigator that she had picked out a particular person because he was the only one with red hair. Defense counsel then read excerpts from a transcript of the recorded conversation which included the following:

"Q: Based on that you were able to pick him up from the lineup?

"MISS SMITH: By red hair.

"INTERVIEWER: You said that was the only guy in the lineup that had red hair?

"MISS SMITH: Yes."

Defense counsel then continued with the following questions:

"Now, after seeing that and hearing that did that — does that refresh your recollection as to why you picked out the person you did from the lineup?

"A: Yes.

"Q: And was it because he was the one with red hair?

"A: Yes."

In evaluating these answers, it is pertinent to note that the witness, who was 18 years old, was described by the hearing court in a colloquy with defense counsel as appearing to be even younger than her age, and that her testimony discloses several, arguably many, instances in which she had quite clearly misunderstood the meaning of the questions asked by counsel and had answered on the basis of that misunderstanding. When the above-quoted answers are considered in context and in the light of the total testimony of the witness, there is at least a substantial possibility that the witness had misunderstood the questions, that the literal meaning of the answers was not the intended meaning, and that the witness had intended to affirm that she had made that statement to the investigator, not that it was true.

Indeed, in at least one respect it seems almost certain that the literal meaning of the answer was not intended.

For the answers relied on, if interpreted literally, directly contradicted the testimony that the witness had given both before and after the quoted answers, that she had in fact seen the shooter, testimony confirmed by police records of her descriptions on the night of the homicide, and that she had selected him on the basis of her observation. It is highly doubtful that the witness had knowingly intended to depart from this otherwise consistent testimony.

Also pertinent to this issue are the following questions and answers given when defense counsel returned to the subject on redirect examination:

"Q: And was one of the reasons you made the identification at the lineup because the person you picked out had red hair?

"A: Yes.

"Q: And did you tell that man who was at your house that you picked out that person because he was the only one with red hair?

"A: No.

"Q: You didn't say that?

"A: No."

It should be noted that in the first answer quoted above the witness affirmed that the defendant's red hair was one of the reasons she had picked him out, an answer quite consistent with her having observed him at the time of the shooting and her over-all testimony, not that it was the only reason.

And as to the following questions and answers, there would appear to be only two possible interpretations. Either Jill Smith was denying that she had told the investigator what she had previously acknowledged telling him on direct examination, or she had misunderstood the question and was intending to deny that she had picked him out because he was the only lineup participant with red hair. The latter seems clearly to be the more probably correct interpretation and confirms as at least a substantial possibility that the answers relied upon in the dissenting opinion as dispositive reflected a misunderstanding of the questions.

Moreover, it is apparent from the trial court's comments in a colloquy with defense counsel that he did not interpret the testimony of the witness as affirming that the defendant was the only person with red hair. Particularly with regard to such a witness, this judgment of an experienced and seasoned Trial Judge, who had the opportunity not available to us of observing the questioning close up, is entitled to substantial weight.

Even if Miss Smith had intended to testify according to the literal meaning of the answers, it is by no means self-evident that the hearing Judge would have been required to accept those answers as reliable testimony. It is at best doubtful that in the usual situation an identifying witness will be able, months after the event, to recall accurately the physical characteristics of each of the persons in the lineup whom she did not recognize as having committed the crime with which the lineup was concerned, and whose physical characteristics she had no occasion to remember after the lineup was completed. Common sense and experience are persuasive that a witness to a lineup will quickly pass from those who do not evoke a spark of recognition and focus on the person or persons who do. Such witnesses have no occasion to examine closely the features and characteristics of those whom they concluded were not involved in the criminal events, and they have no occasion thereafter to remember such features.

No doubt if it were the fact that the witness had not seen the event and only picked out the defendant because he had red hair, she would indeed have had a compelling reason to have observed that aspect of the lineup and remember it. But that quite clearly was not the situation here. Accordingly, even if the hearing Judge had interpreted the disputed answers in their literal sense, which he apparently did not, and if therefore he had reason to evaluate the reliability of the testimony, he could properly have rejected the answers as insufficiently reliable.

In assessing the probative value of the answers to which the dissenters give decisive effect, there are other pertinent circumstances that require consideration. As already noted, defense counsel was present at the lineup and voiced no objection to its composition at a time when, if it was in

fact suggestive, there was an opportunity to correct the defect, and he offered no explanation of his failure to do so at the hearing.

It is no answer to this to refer to a passing comment in a Court of Appeals decision addressing a separate issue that the role of a lawyer at a lineup is passive (*Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, 444). Nor would it be an answer to refer to decisions of the Court of Appeals distinguishing between the right to counsel at lineups and at the taking of statements in which the court described the role of lawyers at lineups as "relatively passive" (*People v Blake,* 35 NY2d 331, 337; *People v Hawkins,* 55 NY2d 474, 485).

Defense counsel was representing a man arrested for a calculated murder who faced a very heavy mandatory sentence if he were to be convicted of the crime. He was present at a lineup intended to determine whether the only eyewitnesses to the murder would identify his client as the killer. It contradicts normal experience and common sense to suppose that defense counsel would have remained silent if he had observed that the lineup was so constituted as to point the witnesses unfairly to his client (cf. *People v Hawkins, supra,* at pp 492, 493 [dissenting opn]).

There are only two plausible explanations for counsel's failure at the time of the lineup to object to it as suggestive. One is that the lineup in fact did not appear to him to be suggestive, a circumstance that would be of significant probative weight, considering that he had the opportunity to observe the lineup directly, as we do not, and observed it from the perspective of someone whose overriding concern appropriately was the protection of his client's rights.

The second possible explanation is that counsel said nothing because he chose to take his chances on the results of the lineup, reserving the option in the event his client was identified, to challenge the lineup as suggestive at the hearing. We need not explore the implications of this kind of behavior because it appears improbable from a study of the hearing minutes that defense counsel had intended at the start of the hearing to put in issue the composition of the lineup. The record is persuasive that counsel approached the hearing on the basis of quite other theories

which he expounded at length to the hearing court, and that the issue which has divided this court resulted from his belated recognition of the possible utility of the two answers given by Jill Smith.

Indeed, it is difficult to accept that the hearing was conducted as it was by defendant's resourceful and conscientious counsel if he knew as a matter of personal observation that the defendant was the only person in the lineup with red hair and necessarily knew that this information was shared by the Assistant District Attorney, the arresting detective, a paralegal assistant in the District Attorney's office, and the defendant himself. If defense counsel knew the lineup was suggestive as a matter of personal observation, it is difficult to understand why he did not call on the District Attorney to stipulate to the fact that made it suggestive; did not call her as a witness if for any reason she chose not to do so; did not offer to testify himself, which would have been his right, if not his obligation, under the circumstances; asked no question pertinent to the issue in his extended cross-examination of the detective; made no effort to ascertain whether the stand-ins were known and, if so, request their production for the direct observation of the hearing court.

Even more inexplicable is defense counsel's response after the hearing court denied the motion to suppress in an opinion that addressed each of the issues raised. Counsel was permitted to renew his argument to the hearing court after that decision, and did so, in support of an application to reopen the hearing to call another witness and recall witnesses who had already testified with regard to certain issues. Indeed, his application was granted to a limited extent by the hearing court which directed the recall for a limited purpose of the arresting detective. Significantly, defense counsel did not urge that the hearing be reopened to permit further testimony on the one issue concerning which he had direct knowledge, nor did he thereafter take advantage of the recall of the detective to ask permission to question him about the composition of the lineup.

Undoubtedly, unusual things happen in the course of hearings and trials. There may be an explanation for the approach taken by defense counsel at the lineup and at the

hearing that is consistent with the dissenters' evaluation of the evidence and that is not apparent from the record. But it remains difficult to believe on this record that defense counsel, if he knew what he must have known if the facts were as found by the dissenters, would have rested his case on this issue on the two one-word answers given by Jill Smith.

We do not believe that *People v Havelka* (45 NY2d 636, 643) bars a remand for a further hearing under these circumstances. *Havelka* sets forth the general principle that, with some exceptions, where an appellate court finds a failure of proof by the People with regard to a critical element in a suppression hearing, a remand for the taking of further testimony should not be permitted. The Court of Appeals noted its concern lest the evidence at such a hearing be tailored, unconsciously or otherwise, to meet the requirements established by the appellate court (at p 643). This case comes clearly within the principle of the exceptions noted in *Havelka*, if indeed that case has any relevance whatever.

What confronts us is a hearing in which the evidence on a potentially dispositive issue is ambiguous and doubtful with regard to facts concerning which there was, and is, readily available to both sides explicit and reliable evidence that was not introduced by either side for reasons that cannot be determined with certainty, but which might well be related to the belated character of the manner in which the issue was raised by defense counsel, and a situation in which there is little, if any, realistic possibility that the testimony at the reopened hearing could be tailored.

Under these circumstances a further hearing is required to permit the introduction of evidence to establish facts which there is every reason to believe can be established clearly and definitely. Without any criticism of the able and experienced Justice who presided over the hearing, the circumstances make it advisable that the reopened hearing be conducted before another Justice.

Accordingly, this appeal from a judgment of the Supreme Court, New York County (STECHER, J. on suppression hearing and McGINLEY, J. and a jury on trial), rendered

December 22, 1980, convicting defendant of murder in the second degree, and sentencing him to an indeterminate term of 25 years to life, should be held in abeyance and the matter remanded for a suppression hearing addressed to the question of whether the lineup at which the defendant was identified was fair or impermissibly suggestive.

MURPHY, P. J. (concurring in Justice CARRO's dissent and dissenting in a separate opinion). I concur in Justice CARRO's dissent. However, I would also suppress Jill Smith's in-court identification.

The defendant was charged with murdering Lloyd Tillet as Tillet sat in a car on March 3, 1980. Prosecution witnesses Jill Smith and Angela Dortch were present in the car at that time. Immediately after the shooting, Smith and Dortch informed the police that the murderer was a light-skinned black man with red hair and a red beard. These two witnesses repeated this description on several occasions before the lineup held on March 7, 1980. In that lineup, there were five participants. While all the participants appear to be light-skinned black men, Jill Smith testified that defendant was the only participant with red hair. In its brief, the prosecution does not contend that any other participant in the lineup had red hair. This lineup was impermissibly suggestive because it improperly focused the witnesses' attention upon defendant. (*People v Johnson,* 79 AD2d 617; *People v Lebron,* 46 AD2d 776.) Therefore, the identification made by Smith and Dortch at the lineup must be suppressed under the more restrictive standards in this State. (*People v Adams,* 53 NY2d 241.)

It should also be stressed that a defense attorney has a passive role at a lineup (cf. *Lee v County Ct. of Erie County,* 27 NY2d 432, 444). Therefore, even though the defense attorney did not make an objection at the lineup, he properly challenged the fairness of the lineup at the *Wade* hearing.

Since the lineup was unnecessarily suggestive, it was incumbent upon the prosecution to establish by clear and convincing evidence that the witnesses had an independent basis for their identification of defendant at trial (*People v Rahming,* 26 NY2d 411, 416). Under the present

state of the law, reliability is the linchpin in determining the admissibility of identification testimony (*Manson v Brathwaite,* 432 US 98, 114).

In view of the fact that Dortch identified defendant's "black and white" photograph in an array on March 4, 1980, there is ample proof in the record to conclude that she had an adequate opportunity to observe the murderer. There is no evidence at the hearing to support the conclusion that Dortch was improperly influenced, by either the police or civilians, in choosing defendant's photograph at the pretrial stage or in identifying defendant at trial. Since the clear and convincing evidence shows that Dortch had sufficient time to view the murderer, her testimony is reliable and may be admitted at trial for purposes of identifying defendant at the scene of the murder.

However, the same may not be said for the reliability of Smith's identification testimony. Depending on whose testimony is credited at the suppression hearing, Smith either failed to choose a photograph or chose an incorrect photograph. This failure on Smith's part is one indication that she did not have an adequate opportunity to see the murderer. (Cf. *People v Bruno,* 77 AD2d 922.)

Smith's testimony at the hearing was further discredited by the statement which she admittedly gave to the investigator hired by defendant. In that statement, Smith told the investigator, *inter alia,* that she never saw the murderer. She had allegedly been informed that the murderer was a black man with red hair. Smith told the investigator that, based upon the information she had received from others, she chose defendant at the lineup.

The prosecutor did not establish by clear and convincing evidence that Smith had an independent basis for identifying defendant at trial. To the contrary, the weight of the evidence at the hearing impels the conclusion that Smith did not see the murderer and that her testimony is unreliable. Thus, she should not be permitted to identify defendant at trial.

Accordingly, the judgment of the Supreme Court, New York County (McGINLEY, J. at trial; STECHER, J. at *Wade* hearing), rendered December 22, 1980, convicting defendant after a jury trial of murder in the second degree and

sentencing him to a prison term of 25 years to life, should be reversed, on the law and the facts, the motion to suppress should be granted to the extent of suppressing (i) the lineup identification made by Smith and Dortch, and (ii) any in-court identification made by Smith, and a new trial should be ordered.

CARRO, J. (dissenting). The defendant, as the moving party, bears the ultimate burden on a motion to suppress of proving that the evidence should not be used against him. The People, nevertheless, have the burden of going forward to show the legality and the reasonableness of the police conduct in the first instance (*People v Berrios*, 28 NY2d 361, 367; *People v Sutton*, 47 AD2d 455, 458-459). The burden upon the defendant is by a preponderance of the evidence.

The only evidence in the record as to whether the defendant was the only participant in the lineup with red hair is the testimony of Jill Smith, one of the two identifying witnesses. That testimony was based upon an interview with a defense investigator, where defense counsel stated:

"does that refresh your recollection as to why you picked out the person you did from the lineup?

"A: Yes.

"Q: And was it because he was the one with red hair?

"A: Yes."

and further on,

"Q: Didn't you just say you picked out the person in the lineup because he had red hair?

"A: Yes."

Rather than speculate on insufficient evidence upon the motives and understanding of the witness, for the purpose of determining burden of proof we must accept her words in their plain meaning. If she in fact misunderstood the question, the Assistant District Attorney was in a position to clarify her position on cross-examination. The legal question involved is whether this testimony satisfies the defendant's burden of proof. If it does, as to the lineup issue, the defense need do nothing further. The burden shifts to the District Attorney, who then assumes the

obligation of making a record to establish that the defendant was not the only red-haired person in the lineup, or that even if he were, the lineup was still not tainted, thus transferring to the prosecution those obligations placed upon defense counsel by the majority.

Since this testimony was the only evidence on the issue and was by one of the two identifying witnesses, it satisfied the defendant's burden of proof, as a matter of law, thus shifting the burden to the People to rebut it or to show that no taint resulted. The District Attorney made no attempt to do either.

The hearing Judge apparently considered the photograph of the lineup to be dispositive. On several occasions he limited defense counsel and prevented him from going further into this crucial issue. He channeled the hearing into the issues of the prior photographic identification and of whether the police had made improper suggestions to the witnesses in ways other than in the constitution of the lineup. As to the lineup, during argument the court stated as follows: "I can make this observation now, though, as far as the lineup itself is concerned, this repeated insistence by the attorney for the defendant, that his client is the only person who appears to be a light skinned blackman [sic] with redish [sic] hair is not supported by the photograph. The photograph that I have here, which has been marked Exhibit #4 the man in the center has skin-coloring which would appear to be similar to or lighter than that of the defendant, his hair seems to be lighter in color than the defendant's. His features would appear to be that of a black man. I do not read the law to suggest that all people in a lineup have to look like quintuplets. I think this is a reasonably put together lineup."

Unfortunately for this analysis, the photograph referred to is "black and white", and is thus incapable of showing whether any of the participants has red hair.

I would make one further observation concerning the burden of proof in lineup or showup identifications. Does not the burden of the People "to show the legality of the police conduct in the first instance" include the setting forth of the pertinent circumstances surrounding that procedure? Where, for example, the accused matches an un-

common description such as a light complexioned black man with red hair, shouldn't the People, as part of their obligation to set forth legality in the first instance, come forth with an adequate description of the other "stand-ins" or at least provide a *color* photograph? It is the prosecution which has control of and access to the details which make up the necessary proof of the circumstances surrounding the lineup. It is nòt the defense which selects the site of the confrontation or the composition of the lineup, which has the identities and exact descriptions of the stand-ins, which takes the photograph that forms so substantial a part of the evidence of the proceeding and which here inexplicably chose to take a black and white photograph.

The rule concerning the burden of proof in this instance bears directly on the rule excluding improper pretrial identifications, and "the rule excluding improper pretrial identifications bears directly on guilt or innocence. It is designed to reduce the risk that the wrong person will be convicted as a result of suggestive identification procedures employed by the police * * * A defendant's right to due process would be only theoretical if it did not encompass the nèed to establish rules to accomplish that end * * * Excluding evidence of a suggestive [line-up] does not deprive the prosecutor of reliable evidence of guilt. The [other] witness would still be permitted to identify the defendant in court [since] that identification is based on an independent source." (*People v Adams,* 53 NY2d 241, 251.)

This matter should not be remanded for another suppression hearing to permit the People to attempt, for the second time, to sustain its burden of proof. While the People should not be deprived of a full and fair opportunity to present evidence of the dispositive issues involved at a suppression hearing, they are offered but a single opportunity for the presentation and resolution of such factual questions. "Generally, where 'no contention is made that the People had not had [à] full opportunity to present evidence * * * [t]here [is] no justification * * * to afford the People a second chance to succeed where once they had tried and failed'" (*People v Havelka,* 45 NY2d 636, 643; *People v Bryant,* 37 NY2d 208, 211).

The motion to suppress the lineup identification should be granted, the conviction reversed, and the case remanded for new trial.

MILONAS, J., concurs with SANDLER, J.; ROSS, J., concurs only to the extent of remanding for a hearing before another Justice; MURPHY, P. J., dissents in an opinion; CARRO, J., dissents in a separate opinion in which MURPHY, P. J., concurs.

Appeal from judgment, Supreme Court, New York County, rendered on December 22, 1980, held in abeyance and the matter remanded for a suppression hearing addressed to the question of whether the lineup at which the defendant was identified was fair or impermissibly suggestive.