THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LESTER IRVING CRANDALL, Appellant.

Third Department, May 23, 1985

### APPEARANCES OF COUNSEL

*Terence L. Kindlon* for appellant.

*Sol Greenberg, District Attorney (John P. M. Wappett* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

On September 9, 1983, a State Police investigator made an oral application via telephone to a County Judge of Albany County, pursuant to CPL 690.35, for a search warrant authorizing the search for illegal drugs of defendant's person, possessions and of his truck, which had been observed parked in the long-term parking lot at the Albany County Airport. The Judge heard statements under oath from the investigator-applicant and from a confidential informant, who was subsequently identified as a police undercover officer. The informant averred that he had purchased quantities of cocaine directly from defendant on some seven recent occasions, that just three days previously defendant had told him that he was about to make a "drug run" to obtain more cocaine, and that the presence of defendant's vehicle at the long-term parking lot of the airport meant that defendant had done so and would be returning with a replenished supply. Following this colloquy, the Judge indicated that he was granting the application. The police then set up a surveillance of defendant's truck at the airport. Later that evening, defendant arrived and was observed entering and then driving off in the truck. The police stopped defendant several miles from the airport. A search of the vehicle unearthed a suitcase containing some $21,000 in United States currency, but no drugs. Defendant was then taken to the State Police barracks in Loudonville and was strip searched, during which a pouch containing cocaine was discovered strapped between his legs. Defendant was indicted for criminal possession of a controlled substance in the third degree and, following trial, convicted as charged.

On this appeal, defendant raises various issues, only one of which requires extended discussion. No reversible error was committed in the trial court's *Sandoval* ruling permitting the use for impeachment purposes of several convictions obtained

against defendant from 1968 to 1974. Either facially or on their underlying facts, the crimes committed were directly probative of defendant's credibility. Hence, they had a "very material relevance, whenever committed" (*People v Sandoval,* 34 NY2d 371, 377). The trial court carefully weighed the various competing considerations required by the *Sandoval* case (*supra,* p 376) and, on that basis, excluded two assault convictions of the same period. We cannot say that there was any abuse here of the discretion accorded a trial court's ruling on a *Sandoval* motion (*People v Talamo,* 55 AD2d 506, 509). Likewise, reversal is not required because of the People's tardiness in responding to a pretrial discovery demand for copies of any statement defendant made to the police (CPL 240.80 [3]). The proper disclosure was eventually made some two months before trial and the statement itself was never introduced into evidence. There has been no showing whatsoever that the delay caused any prejudice for which any sanctions should be imposed, let alone reversal.

■ Upon sustaining defendant's objection to an inadmissible statement by one of the police witnesses, it would have been better for the trial court to have instantly followed with a curative instruction. At most, however, the omission was harmless error, as shown by the failure of the defense to have moved or asked for further instructions when it had ample opportunity to do so at subsequent stages of the trial. The remaining assignment of error pertaining to the trial alludes to a claimed delay of more than two hours in the trial court's response to the jury's request during its deliberations to have certain testimony read to it. However, this point is entirely dependent upon facts dehors the record and, therefore, may not be considered on direct appeal (*People v Johnson,* 73 AD2d 652).

The only troubling issue raised by defendant on this appeal relates to the validity of the search warrant procedure through which the police were authorized to seize the drugs from defendant's person. Statutory support for the issuance of a search warrant based upon an oral, telephone application was first introduced in New York in 1982 by amendments to CPL article 690 (L 1982, ch 679; CPL 690.35 [1]; 690.36 [1]). An applicant is required to identify himself to the judge and state the purpose of the application (CPL 690.36 [2]). The judge must then place under oath the applicant and any other person providing information in support of the application, and must record the oaths and remaining communications (CPL 690.36 [3]). If, after hearing the applicant's presentation, the judge is satisfied that an adequate showing has been made, the statute further directs the applicant to "prepare the warrant in accordance with section

690.45 and * * * read it, verbatim, to the judge" (CPL 690.40 [3]). The judge must also have the entire record transcribed, then certify and file it within 24 hours of issuance of the warrant (CPL 690.36 [3]).

The record of the suppression hearing establishes that the conversation between the applying State Police investigator and the Judge was fully recorded stenographically and transcribed, as was the Judge's discussion with the undercover officer, except for two off-the-record conversations in which the Judge solicited information to verify the informant's identity. There was also testimony attesting to the accuracy of the transcript. Moreover, examination of the sworn statements of the applicant and informant clearly demonstrates that there was sufficient evidence to support a finding of probable cause for the search. However, the record equally establishes that the statutory procedures for issuance of a search warrant upon oral application were not followed in several respects, namely: (1) although the officers were sworn in, the administration of the oaths was not recorded or transcribed; (2) as previously noted, portions of the oral statements given by the officer and the informant were also not recorded or transcribed; (3) the applicant failed to prepare a written warrant and then read it to the Judge, verbatim; and (4) the Judge did not certify to the accuracy of the transcription.

In our view, the failure of the Judge to have had the oaths and the brief conversations regarding the informant's identity recorded and transcribed, and his failure to certify the accuracy of the record, were not fatal to the validity of the search. The Federal courts, in construing a comparable statute (Fed Rules Crim Pro, rule 41 [c] [2] [in 18 USC, Appendix]), have held that similar shortcomings are mere technical defects which may be disregarded in the absence of a showing of prejudice or an intentional avoidance of the rule's requirements (*United States v Loyd,* 721 F2d 331; *United States v Stefanson,* 648 F2d 1231; *United States v Johnson,* 641 F2d 652). Furthermore, in analogous situations, the Court of Appeals has excused the lack of literal compliance with statutory search warrant procedures (*see, People v Sullivan,* 56 NY2d 378, 383-384; *People v Brown,* 40 NY2d 183, 185-186).

We reach a different conclusion, however, regarding the failure of the applying officer to prepare the warrant and then read it, verbatim, to the Judge, as required by CPL 690.40 (3). This is an issue of first impression in New York.* Without deciding

---

* There is also a dearth of precedent on the issue in other jurisdictions, and the existing decisions are split (*compare, State v Liberti,* 161 NJ Super 575,

whether a statute authorizing the granting and execution of a purely oral search warrant pursuant to a telephonic application would pass constitutional muster, it is clear that the 1982 amendments to CPL article 690 were intended only to authorize oral *applications,* not verbal search warrants. No modification was made to various key sections of article 690 in which the necessity of a written instrument constituting the search warrant, in the hands of the executing officer, is expressed or implied. Thus, a search warrant is defined as a "court *order* and *process*" directing a police officer to conduct a search (CPL 690.05 [2]; emphasis supplied). A "process", in traditional legal parlance, is a writ or other formal instrument issued by a court to acquire jurisdiction over person or property (Black's Law Dictionary 1084 [5th ed 1979]; 2 Bouvier's Law Dictionary 2731 [3d rev ed 1914]). Contrastingly, CPL 690.35 (1) provides that the *application* "may be in writing or oral". CPL 690.45 sets forth eight general requirements for the form and content of a search warrant and contains two provisions specifically addressed to variations thereof for warrants issued on oral application; namely, that a warrant so obtained need not be personally subscribed by the judge (CPL 690.45 [1]), but must bear a notation of the name of the issuing judge and the time and date of authorized issuance (CPL 690.45 [2]). Obviously, these exceptions do not negate, but, in fact, support, the continued need for a written warrant obtained on oral application. Moreover, the 1982 oral application amendments did not create any exception to the requirement of CPL 690.50 (5) that, once a warrant has been executed, the executing officer must *return* the warrant to the court along with the seized property.

Like the previously discussed procedural omissions, the People argue that the failure to prepare and read the warrant to the Judge during the application process should be overlooked on a theory of substantial compliance, because probable cause was in fact determined by a neutral magistrate and the oral authorization for the search was later transcribed. However, we perceive strong reasons not to excuse the total failure here to comply with CPL 690.40. There are, in our view, significant qualitative differences between the requirement that a written instrument be drawn and read to the issuing judge during the application hearing and those other procedural directives previously discussed to which a lack of strict adherence has been forgiven. The recording, transcribing, certifying and filing requirements of the statute are designed to insure the regularity of the process of

392 A2d 169, *with Bowyer v Superior Ct.,* 37 Cal App 3d 151, 111 Cal Rptr 628), or inconclusive (*see, United States v Shorter,* 600 F2d 585).

applying for the warrant and to preserve the integrity of the record for review in any ensuing criminal litigation. Mandating the reduction of the warrant to a written instrument and the reading of it to the issuing judge performs not only these functions, but important others. It requires the issuing judge to focus specifically and deliberately on the warrant's particular description of "the place to be searched, and the persons or things to be seized" in fulfillment of the constitutional command (US Const, 4th amend). It also insures that the search is only as extensive as the invasion of privacy that was actually authorized. And it provides immediately available documentation of the existence and scope of that authorization, both to persons in possession of the property to be seized and law enforcement officials enlisted in the execution of the warrant. As noted by a leading commentator on criminal procedure and member of the Judicial Conference Advisory Committee that proposed the 1982 legislation, these particular requirements provide "the ultimate official security and protection" in the procedures for issuance of a warrant on oral application by telephone (Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 690.40, p 389). Thus, the important prophylactic objectives reflected in the requirements of CPL 690.40 militate against dismissing the total failure to comply therewith presented here as a mere technical irregularity. Moreover, we are mindful that a verbal authorization to search would radically depart from a long, unbroken common-law tradition that a judicial fiat must be in writing before it can effectively impinge upon important rights. The Legislature in 1982 opted not to take that drastic step, and this court should not do so through the guise of finding substantial compliance.

It follows from the foregoing that the trial court erred in upholding the seizure of drugs from defendant on the basis of its ruling that a valid search warrant was issued. Understandably, in view of the manner in which the issues at the suppression hearing were framed and decided, no attempt was made to explore alternative grounds for upholding the search. Accordingly, under the circumstances presented here, we deem it appropriate to withhold decision and remit for a further suppression hearing at which such alternative grounds to uphold the search may be presented and determined (*see, People v White,* 95 AD2d 787; *People v Adams,* 90 AD2d 1; *cf. People v Dodt,* 61 NY2d 408, 418).

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Decision withheld, and matter remitted to the County Court of Albany County for further proceedings not inconsistent herewith.