■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

GEORGE H. PRICE, Appellant. [611 NYS2d 675] —Peters, J. Appeal from a judgment of the County Court of Rensselaer County (Aison, J.), rendered May 8, 1991, upon a verdict convicting defendant of the crimes of arson in the second degree (six counts), attempted murder in the second degree (four counts) and reckless endangerment in the first degree (two counts).

Defendant urges reversal of his conviction by contending, *inter alia*, that the statutory procedure set forth in CPL article 690 governing oral search warrant applications were not followed. CPL 690.36 specifically provides that upon an oral application for a search warrant, the Judge hearing such application "shall place under oath the applicant and any other person providing information in support of the application" (CPL 690.36 [3]). The oath or oaths and all the remaining communications must be recorded *(ibid)*. If after hearing the sworn presentation the Judge is satisfied that an adequate showing has been made, the applicant is then directed to prepare the search warrant *(ibid)*. "In determining an application for a search warrant the court may examine, under oath, any person whom it believes may possess pertinent information. Any such examination must be either recorded or summarized on the record by the court" (CPL 690.40 [1]). CPL 690.40 (3) specifically requires that if a search warrant is based upon an oral application, the applicant, after preparing the warrant in accordance with CPL 690.45, must "read it, verbatim, to the judge". The warrant must further indicate that it has been obtained upon oral application and state the name of the issuing Judge and the time and date when the Judge directed its issuance (CPL 690.45 [2]). Finally, the Judge must have the entire record of the oral application transcribed, certified and filed within 24 hours of the issuance of the warrant (CPL 690.36 [3]).

Defendant contends that County Court (Dwyer, Jr., J.) failed to comply with the rigid strictures of the CPL in two respects. First, he contends that although the police officer made an oral application to the issuing Judge and thereafter prepared a written warrant, the police officer did not then read the warrant back verbatim to the issuing Judge. Second, defendant contends that the warrant did not contain the name of the issuing Judge or the time the warrant was authorized.

In determining whether a probable cause for the issuance of a search warrant based upon an oral application is established, the critical facts and circumstances are only those which were made known to the Judge issuing the search

warrant at the time of the application *(see, People v Edwards,* 69 NY2d 814; *People v Bakker,* 186 AD2d 337). The transcript of the oral application for the search warrant under review reveals that it was made to the Judge on December 6, 1988 over a speaker phone.[1] The police officer formally making the oral application on December 6, 1988 was sworn by the Judge, advised the Judge of his request for a search warrant and described the vehicle defendant was observed driving, as well as a trailer and barn in a described location. The police officer further testified as to the exact items sought to be seized after the issuance of the warrant.

Upon further testimony by the police officer, the Judge directed that the record be transcribed and advised the police officer to make out a warrant. Included in such direction, the Judge specified that the officer include in the warrant the officer's name, his department and classification, as well as a designation or description of the people or premises to be searched. Yet, in issuing such specific direction to the police officer, the Judge did not particularly describe the property authorized to be seized. Rather, the Judge advised the police officer to make out the warrant to include "[a] description of the property that you are looking for, write that down". Thereafter, the police officer was told to "execute the warrant, grab what you think is pertinent and give us an inventory on return of whatever you grabbed, and good luck to you". The written warrant was never read back to the issuing Judge, verbatim or otherwise. Defendant contends that the failure to do so was reversible error, relying on our decision in *People v Crandall* (108 AD2d 413).

In *People v Crandall (supra),* the statutory procedures for the issuance of a search warrant upon oral application were not followed. In reviewing the deficiencies in the search warrant procedure, we found that the failure of the Judge to have the oaths and conversations regarding the informant's identity recorded and transcribed, as well as the Judge's failure to certify the accuracy of the record, were not fatal to the validity of the search *(supra,* at 416). However, we found that we could not condone the failure of the applying officer to both prepare the warrant and thereafter read it back verbatim to the issuing Judge *(supra,* at 416-417). Were we to have approved this defect and determined that it was not substan-

---

**1.** The transcript reflects a prior conversation between the Judge and a person described by the Judge as "Chief Stark", yet it does not reflect that "Chief Stark" was examined under oath or that the conversation was specifically transcribed.

tial, we would have been permitting verbal search warrants. We recognized then "that a verbal authorization to search would radically depart from a long, unbroken common-law tradition that a judicial fiat must be in writing before it can effectively impinge upon important rights. The Legislature in 1982 opted not to take that drastic step, and this court should not do so through the guise of finding substantial compliance" (supra, at 418).

In the matter presently before us, a written warrant was prepared but was not read back to the issuing Judge. By failing to do so, the purpose of ensuring the regularity of the application process was not fulfilled. As we noted in Crandall, the reading of the warrant to the issuing Judge "requires the issuing judge to focus specifically and deliberately on the warrant's particular description of 'the place to be searched, and the persons or things to be seized' in fulfillment of the constitutional command" (supra, at 418, quoting US Const 4th Amend).

The People contend that Crandall is clearly distinguishable because the issuing Judge herein specifically told the requesting officer what to write down and therefore a reading of the written warrant after preparation was unnecessary. We disagree. While it is uncontested that the Judge, when authorizing the warrant, specifically directed the inclusion of the technical aspects thereof, to wit, the officer's name, department and classification, as well as the people or premises to be searched, he did not specifically direct the police officer to include the property the officer had requested to be seized as a result of the warrant. Rather, the Judge said "execute the warrant, grab what you think is pertinent and give us an inventory on return of whatever you grabbed".[2] We find that based upon the record herein, there was not a sufficient showing of "substantial compliance" with the constitutional and statutory requirements (see, People v Taylor, 73 NY2d 683; People v Brown, 40 NY2d 183; People v Crandall, supra).

Addressing next the speedy trial issue raised by defendant, we note the guidance of the Court of Appeals in People v Taranovich (37 NY2d 442) that "there is no specific temporal duration after which a defendant automatically becomes entitled to release for denial of a speedy trial * * *. Instead, the

---

2. The warrant authorized the seizure of the following property: "brown garbage bags (plastic) with yellow pull ties; blue felt tip pens, purple crayons, white 8½ × 11 lined tablet paper, white 9 × 12 paper with no lines, blue and black ink ball point pens".

assertion by the accused of his right to a speedy trial requires the court to examine the claim in light of the particular factors attending to the specific case under scrutiny" *(supra,* at 444-445 [citations omitted]). Moreover, the court in *Taranovich* noted "that no one factor or combination of the factors * * * is necessarily decisive or determinative of the speedy trial claim" *(supra,* at 445). Factors to be considered are "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" *(supra,* at 445).

Assessing these factors, we note that with "all other factors being equal, the greater the delay the more probable it is that the accused will be harmed thereby" *(supra,* at 445). Yet, the Court of Appeals has "steadfastly refused to set forth a per se period beyond which a criminal prosecution may not be pursued" *(supra,* at 445). Here, while defendant was arrested on December 6, 1988 and was arraigned on January 12, 1989, the trial did not commence until February 1991. Clearly, the delay was extensive, but the underlying charge was most serious and there is no evidence that the defense was impaired by the delay. In an effort to establish "good cause" for the extended period of pretrial delay *(see, People v Charles,* 180 AD2d 868), the People contend that they declared their readiness for trial at defendant's arraignment and that the delay was attributable to court congestion, defendant's request for adjournments, ongoing plea negotiations and the resolution of defendant's pretrial motions.

While there is no factual support for the claim of court congestion, we find that the record supports the People's contention that most of the delay was occasioned by resolution of defendant's pretrial motions and not prosecutorial conduct *(see, People v Mann,* 200 AD2d 910; *People v Wilson,* 199 AD2d 631; *People v Jones,* 188 AD2d 745, *lv denied* 81 NY2d 888). Mindful of the guidance of *Barker v Wingo* (407 US 514) and *People v Taranovich (supra),* in balancing these factors with the specific facts of this case, we find that defendant's constitutional rights were not infringed as a result of the delay.

In finding that County Court erred in ruling that the search warrant was valid and in view of the manner in which the issues at the suppression hearing were framed and decided, we note that no attempt was made to explore alternative grounds for upholding the search. Hence, we deem it appropriate to withhold decision and remit this matter for a further suppres-

sion hearing at which such alternative grounds may be presented and determined *(see, People v Crandall,* 69 NY2d 459). As we deem the warrant invalid, we need not determine whether the warrant was issued upon probable cause *(see, People v Crandall,* 108 AD2d 413, *supra).*

Mikoll, J. P., Crew III, White and Casey, JJ., concur. Ordered that the decision is withheld, and matter remitted to the County Court of Rensselaer County for further proceedings not inconsistent with this Court's decision.

