OPINION OF THE COURT
John S. Parker, J.
In August 1986 the defendant was indicted for the crimes of vehicular assault in the second degree (Penal Law § 120.03), assault in the second degree (Penal Law § 120.05 [4]), assault in the third degree (Penal Law § 120.00 [3]), resisting arrest (Penal Law § 205.30), operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [3]), and reckless driving (Vehicle and Traffic Law § 1190). By decision of this court dated February 2, 1987 a hearing was granted to the defendant for the dual purpose of suppressing the results of a blood test taken following an order pursuant to Vehicle and Traffic Law § 1194-a, and, to suppress statements made by the defendant at the time of and following his arrest.
After considering all of the evidence adduced at the hearing, the court makes the following findings of fact and conclusions of law:
On June 28, 1986 at 2:35 a.m. Deputy Sheriffs Fuhrken and Jobson observed the defendant’s vehicle approaching their patrol car on East Main Street, Watertown, New York, at a radar confirmed speed of 48 mph in a 30 mph zone. The officers reversed their direction of travel and pursued the defendant’s vehicle. Though they lost sight of the defendant’s vehicle for a few moments when it turned right on Pearl Street, and then again when it turned left on Water Street, they did come upon the vehicle off the left side of Water Street; the vehicle having crossed the center line and collided with a power pole. Exiting their patrol vehicle they found a passenger, Sidney Maitland, standing outside of the damaged vehicle’s passenger side; a female passenger, later identified as Shanna Maitland, unconscious with bleeding from the mouth and ears, in the back seat; and the defendant, Daniel Arm *802 strong, Jr., lying on his face outside of the driver’s side of the damaged vehicle. Deputy Fuhrken identified himself and told the defendant to lay still. Defendant became combative, verbally abusive toward the officer, and refused to be subdued by the officer. Deputy Fuhrken continued to struggle with the defendant until Watertown City Patrolmen Lanham and Goss arrived to assist him. Defendant was then subdued, handcuffed, and detained in the rear seat of the city patrol vehicle. During the time defendant was struggling against the officers he was informed that he was under arrest for disorderly conduct and resisting arrest. The officers also observed that the defendant was incoherent, violent, smelled of alcohol, verbally abusive, kicking and throwing punches, possessed of glassy, watery and bloodshot eyes, had urinated in his clothing, kept asking the whereabouts of his wife, and appeared to be intoxicated. Defendant continued to yell that he wanted to know where his wife was and did tell one of the officers (Fuhrken) that she was in the vehicle with him. A search was made for the defendant’s wife at the scene without success. Eventually an ambulance and fire rescue truck arrived and, upon the removal of the female passenger from the damaged vehicle, she and her husband, Shanna and Sidney Maitland, were transported to the hospital. After assisting with the investigation and securing the accident scene, City Patrolmen Goss and Lanham proceeded to transport the defendant to city police headquarters. Upon leaving the accident scene at 3:35 a.m. Officer Lanham informed defendant he was under arrest for DWI and proceeded to read the defendant the DWI warnings from a card. The defendant said he understood the warnings and refused to take the test by saying: "I won’t take the test until you find my wife.” Defendant refused to take the breathalyzer test on more than one occasion. The defendant, on arrival at the city police headquarters, was placed in a cell. Having concluded that the defendant was intoxicated, that he was the operator of the damaged vehicle, and that a passenger was seriously injured and a possible fatality, Officer Goss called the District Attorney. The District Attorney came to police headquarters for the purpose of obtaining an oral order for a compulsory chemical test pursuant to Vehicle and Traffic Law § 1194-a. An acting County Judge was contacted by phone and spoke with the District Attorney, Patrolman Goss, and Deputy Fuhrken. A transcript of the conversation was filed with this court on June 30, 1986. The Judge orally authorized an order for the withdrawal of blood samples and the order *803 was prepared and executed, as provided by statute, by Patrolman Goss at 5:25 a.m. on June 28, 1986. The defendant had meanwhile been taken to the House of the Good Samaritan Hospital. At 5:25 a.m. Patrolman Goss phoned the hospital and informed Officer Doolittle that it was "OK to require the sample taken”. Patrolman Goss then "got his papers together” and proceeded to the hospital sometime after 5:30 a.m. When he arrived at the hospital the blood sample had already been taken from the defendant by Dr. Lazo at 5:34 a.m. as testified by City Police Officer Montrois. At no time prior to the taking of the blood sample from the defendant was the order shown to the defendant or to the medical personnel who withdrew the blood. In fact the order had not reached the hospital until sometime after the sample was taken.
The defendant now seeks the relief of suppressing the numerous statements requesting the whereabouts of his wife and suppressing the results of the blood alcohol test.
The court finds the testimony of the People’s witnesses, the only witnesses to testify at the hearing, to be credible.
The court finds that though the defendant was placed under arrest for disorderly conduct and resisting arrest soon after the accident, and that no Miranda warnings were given, the defendant’s statements were not made as a result of custodial interrogation. In fact, other than being informed of his "D.W.I. rights”, and being asked to submit to a chemical test, the defendant was not interrogated at all following his initial arrest. There is nothing in evidence which would suggest that defendant’s statements regarding the whereabouts of his wife were induced, provoked or encouraged by any act of a police officer. They are thus characterized as spontaneous and not the result of custodial interrogation (People v Rivers, 56 NY2d 476; People v Lynes, 49 NY2d 286).
Therefore the defendant’s motion to suppress the statements is denied.
There now remains before this court for determination the issue of whether the results of the blood alcohol test are admissible. Without turning to the question of timeliness (within two hours of arrest) as raised by defense counsel, this issue may be disposed of by turning to the use of the order itself. It is incumbent upon the People to show that the order authorizing the chemical test was available to both the defendant and the personnel performing the chemical test. Such action is dictated by the procedure provided in Vehicle and *804 Traffic Law § 1194-a. The section specifically provides that the order be prepared in accordance with the instructions of the Judge and, if issued orally, "must be signed * * * by the applicant” (Vehicle and Traffic Law § 1194-a [3] [d]). The only possible rationale for this provision is to make available to the defendant, and to the medical personnel, executed and timely authority to compel the chemical test. Anything short of actual delivery of the order would place total reliance upon the applicant’s oral representation that such an order exists. Surely a conflict exists. To insist that the defendant, and more importantly the personnel compelled to administer the test, comply with a verbal authorization, opens the door to possible misrepresentation and potential liability. To avoid these concerns is simply to deliver the executed order. There is no indication that anything less was contemplated by the statute (Vehicle and Traffic Law § 1194-a).
In the instant matter the order was not delivered prior to the administration of the chemical test. In fact Officer Goss has testified that the sample had been taken when he arrived at the hospital with the order.
Accordingly, the defendant’s motion to suppress the results of the blood test taken at the House of the Good Samaritan Hospital on June 28, 1986 should be granted.
Therefore the defendant’s motion to suppress the oral statement of the defendant as above indicated is denied, and the defendant’s motion to suppress the results of the blood test is granted.