OPINION OF THE COURT
Marvin I. Goodman, J.
The defendant, Thomas Scalzo, has been indicted for manslaughter in the second degree, vehicular manslaughter in the second degree (two counts), assault in the second degree, vehicular assault in the second degree (two counts), and operation of a motor vehicle while under the influence of alcohol (two counts).
By stipulation entered into by the People and the defendant’s attorney, the defendant moves to suppress (1) certain statements made by him which he claims were involuntary within the meaning of CPL 60.45 and (2) the results of the defendant’s blood test. In addition a further issue is raised by the defendant as to the probable cause for his arrest.
After conducting a joint Mapp, Huntley and probable cause hearing, the court makes the following findings of fact and conclusions of law:
findings of fact
The sole witness at this hearing was Police Officer John McGivney who at the time of the hearings had been a member of the Nassau County Police Department for a little over five years.
On February 8, 1987 '(Sunday), while assigned to the Nassau County Second Precinct Patrol, at 2:20 a.m., Officer McGivney was called to the scene of a motor vehicle accident on Bayville Avenue in the Incorporated Village of Bayville. He arrived at about 2:22 a.m. and observed two motor vehicles. One red car was on one side of the road with extensive damage to the front and passenger side. The other was approximately 100 feet further east lying on its roof, directly in the middle of the roadway blocking both lanes.
At the time he arrived, no other police officers were at the scene. Upon arrival, he observed a female driver by the red car crying, and a male passenger (deceased) trapped in the front passenger seat. The male passenger was cut up and his face was purple.
Officer McGivney then checked the second vehicle. As he *541 approached, he saw two people seated on the north curb. One of the individuals (defendant) had some facial lacerations in the vicinity of the forehead and one of his cheeks, and was holding a rag or towel up against his face. The individual with the rag or towel stated that he was the driver of the overturned car, advised the officer that he was all right and the officer informed him that an ambulance was on the way.
After speaking with the defendant, the officer requested a Herst tool (a device for removing persons trapped in a car). He then checked on what he could do for the male trapped in the car.
The defendant and the female operator of the red car were transported by ambulance to Glen Cove Community Hospital. No police personnel were in the ambulance.
At approximately 2:55 a.m., Officer McGivney arrived at Glen Cove Hospital and went to see the defendant to see if he had "any better recollection as to what had occurred”, and get information as to license and registration. The defendant was in the emergency room, laying on a stretcher, was conscious and was with his father. Officer McGivney asked the defendant "what had happened, whether he noticed the other car or anything”. The defendant said, "the first time he noticed it, it was in his lane. He swerved to avoid it. As he swerved, the car swerved again. He said he originally was heading westbound on Bayville Avenue.”
Officer McGivney then asked the defendant, "are you sure you were westbound or eastbound?” and "were you headed toward your parents’ house or away from it?” The defendant "finally said that he was heading towards his parents’ house which was eastbound”.
While talking with the defendant, Officer McGivney again noticed injuries on his face which he described as severe and it appeared that he had received some treatment at that point. He also noticed an odor of alcoholic beverage on his breath.
On direct examination, Officer McGivney described the odor as "moderately strong”, while on cross-examination, stated that in testifying before the Grand Jury, he described the level as "a moderate level. It wasn’t overly strong. If you stood there with him in conversation two feet away it was very noticeable”.
After leaving to speak with the female operator of the other vehicle, Officer McGivney returned in approximately five min *542 utes and at approximately 3:25 a.m. informed the defendant that he was being placed under arrest for suspicion of driving while intoxicated. At 3:50 a.m. Officer McGivney read to the defendant from People’s exhibit one in evidence as follows:
"You are requested to submit to a chemical analysis of your breath to determine whether or not you are intoxicated or your ability is impaired by the consumption of alcohol.
"The results of such test may be used for or against you in court. You may refuse to permit the test to be taken.
"However, refusal to submit to a chemical test will result in the immediate suspension and subsequent revocation of your license or driving privilege whether or not you are found guilty of the charge for which you are arrested.
"In addition, if you refuse to submit to a chemical test, your refusal can be introduced in evidence against you at any trial, proceeding or hearing resulting from this arrest.
"You may notify a physician of your choosing to administer a chemical test in addition to the test you are now being requested to submit to. Will you submit to a chemical test for intoxication?”
The defendant then stated that "he wanted to talk to his lawyer prior to consenting or refusing.” The defendant’s father then left the room, returned, whispered in the defendant’s ear, and the defendant then said he was going to refuse to take the test.
Following the refusal, which was about 4:20 a.m., efforts were made to get a court order. At approximately 5:30 a.m., Officer McGivney was informed that a court order had been obtained and blood was taken from the defendant at 5:50 a.m.
By stipulation the application and court order for the blood test were received as People’s exhibit number two in evidence.
CONCLUSIONS OF LAW PROBABLE CAUSE
" 'Probable cause requires, not proof beyond a reasonable doubt or evidence sufficient to warrant a conviction * * * but merely information which would lead a reasonable person who possesses the same expertise as the officer to conclude * * * that a crime is being or was committed’ ”. (See, People v Crosby, 91 AD2d 20, 26; People v Oden, 36 NY2d 382, 384-385; People v Russell, 34 NY2d 261, 262-264; People v Miner, 42 NY2d 937, 938.)
*543 This court takes note that several of the traditional indications of intoxication such as glassy eyes, slurred speech, staggering and bloodshot eyes are absent in this incident.
However, as stated in People v Cruz (48 NY2d 419, 427), "Intoxication is not an unfamiliar concept. It is intelligible to the average person (Richardson, Evidence, § 364, pp 332-333). It is familiar to the law and has long been held to mean an incapacity to perform various mental or physical acts which an average person would be able to do. Of course intoxication is a variable term in the sense that a person, despite the consumption of alcohol, may be able to do certain things (for instance, physitally operate a motor vehicle), while his ability, to do something more demanding (such as operate a motor vehicle safely) may be destroyed.” (Emphasis supplied.)
"The users of highways are entitled to other users who are in control of a ton or more of metal and rubber and who are not impaired to any extent in the operation of a motor vehicle.” (People v Robbins, 132 Misc 2d 653, 655.)
And, based on (1) the moderate odor of an alcoholic beverage on the breath of the defendant coupled with (2) a head-on two-car collision on a two-lane roadway divided by a double yellow line, and (3) the defendant’s statements, (a) that he did not notice the other vehicle until it was in his lane and (b) that he was going west when in fact he was going east, this court finds probable cause for the arrest of the defendant.
BLOOD TEST AS TO TIME LIMITATION
As to the defendant’s contention that the two-hour time limit contained in section 1194 of the Vehicle and Traffic Law should be imposed on court-ordered tests under section 1194-a of the Vehicle and Trafile Law, this court concurs with and follows the recent ruling in People v McGrath (135 AD2d 60).
"Nothing in the unambiguous language of Vehicle and Traffic Law § 1194-a indicates that the Legislature intended to impose a specific time limitation on the performance of court-ordered chemical tests.” (People v McGrath, supra, at 62.)
This court further finds that following the issuance of the court order (5:27 a.m.) there was no unreasonable delay in the administering of the test (5:50 a.m.).
And the time (2:20 a.m.) from the accident and the test refusal (4:20 a.m.) to the drawing of the blood (5:50 a.m.) from the defendant is not so remote as to make as a matter of law *544 the results irrelevant to the central question of the defendant’s blood alcohol count at the time of the accident.
Accordingly, the defendant’s motion to suppress the results of the defendant’s blood test on this ground is denied.
CLAIM OF DEFECTIVE COURT ORDER AND SUPPORTING AFFIDAVIT
The thrust of the defendant’s contention in his claim that the court order and supporting affidavit are defective is that (1) the Assistant District Attorney who applied for the order (a) made conclusory rather than specific allegations of fact, and (b) misstated the one central factor relied upon by the police, and that (2) all of the communications between the applicant and the issuing Judge were not recorded as the transcript is missing critical portions of those communications.
In support of his position the defendant relies upon People v White (133 Misc 2d 386) and People v Crandall (108 AD2d 413).
This court finds the White and Crandall cases (supra) distinguishable from this case.
In Crandall (supra), (1) the oaths of the applicants were not recorded or transcribed, (2) portions of the oral statement given by the officer and the informant were also not recorded or transcribed, (3) the applicant failed to prepare a written warrant and then read it to the Judge verbatim, and (4) the Judge did not certify the accuracy of the transcription.
In White (supra), following the granting of an oral, telephonic application for a court order, neither the applying officer nor accompanying Assistant District Attorney prepared a written order to be signed by the applicant as required by Vehicle and Traffic Law § 1194-a (3) (d).
This court finds none of the aforementioned defects are present in this case and takes particular note that the defendant at page 23 of his memorandum of law concedes that the Assistant District Attorney’s portion of the written order as endorsed by the issuing Judge is complete.
This court also finds that the application was not based op conclusory rather than specific allegations of fact and that the odor of an alcoholic beverage even if considered “moderate” rather than “strong”, when coupled with the head-on motor vehicle collision, was sufficient “reasonable cause” for the issuance of the order.
*545 It is not disputed that the entire oral application was recorded and this court finds that those portions of the recording believed to be inaudible (note — no audibility hearing was held) do not constitute a material defect, do not in any way demonstrate prejudice to the defendant, or lead to a conclusion that his constitutional rights were violated.
"Search warrants should be tested in a commonsense and realistic manner with minor omissions and inaccurancies not affecting an otherwise valid warrant”. (People v Davis, 93 AD2d 970, 971.)
Were these issues raised in connection with a search warrant under CPL article 690, this court might be persuaded otherwise as to the believed inaudible portions of the transcript as such search warrant can be for designated premises, or of a designated vehicle, or of a designated person, for the purpose of seizing designated property or kinds of property, can involve no-knock authorization, and involves time and date limitations for execution. And, under such wide variables inaudibility could well be a major factor to be analyzed carefully.
However, in the case of an order issued under Vehicle and Trafile Law, such order is for one purpose only and that is the taking of blood from a designated person and there are no other variables or discretionary factors involved. From this court’s examination of the application and the order as contained in People’s exhibit number two as set forth as follows, all the requirements of Vehicle and Traffic Law § 1194-a were met:
"TRANSCRIPT OF APPLICATION FOR BLOOD TEST OF THOMAS SCALZO AND KATHRYN McCARTY
"FEBRUARY 8, 1987
"a.d.a. Klein placed under oath.
"a.d.a. Klein Okay, I have an affidavit I’m going to read to you: County Court of Nassau County. In the Application of Fred Klein for an Order to compel Thomas Scalzo and Kathryn McCarty to submit to a chemical test, pursuant to VTL Section 1194-a. State of New York, County of Nassau. Fred B. Klein, being duly sworn, deposes and says that: I am a district attorney as defined in CPL Section 1.20 (32) and I have been informed by Police Officer John McGivney, Shield 6193, Second Precinct, Nassau County Police Department, that at 3:20 a.m. on 2/8/87, he placed Thomas Scalzo and Kathryn Mc *546 Carty under lawful arrest for violating Subdivision 3 of Section 1192 of the Vehicle and Traffic Law. I make this affidavit in support of an application for an order to compel the arrestee to submit to a chemical test, pursuant to Section 1194-a of the Vehicle and Traffic Law.
"Thomas Scalzo was the operator of a motor vehicle, to wit, a 1987 Lincoln, registered in the State of New York, bearing license plate number VKY 607 and Kathryn McCarty was the operator of a motor vehicle, to wit: a 1982 Plymouth, registered in the State of New York, bearing license plate number UBF 857, and in the course of such operation a person other than the operator was killed. The deceased was a passenger in Kathryn McCarty’s automobile and is named Brian Leefe.
"Based on the totality of the following circumstances, there is reasonable cause to believe that both arrestees were operating a motor vehicle in violation of Section 1192 of the Vehicle and Traffic Law. Both cars were in a head on collision at 2:20 a.m. on 2/8/87 at Bayville Avenue in Bayville, New York. At Glen Cove Hospital, both arrestees admitted to operating. the respective vehicles and both had a strong odor of an alcoholic beverage on their breath.
"After being placed under lawful arrest, both arrestees refused to submit to a chemical test in accordance with the provisions of Vehicle and Traffic Law Section 1194, by orally refusing after being given the requisite information and warnings.
"Wherefore, it is respectfully requested that the Court issue an order requiring the arrestees to submit to a chemical test to determine the alcoholic or drug content of his or her blood, their blood and directing a person designated by Subdivision 7 of Section 1194 of the Vehicle and Traffic Law to withdraw a blood sample from the arrestee for the purpose of determining the alcoholic or drug content thereof. Fred Klein, deponent. Sworn to before me this 8th day of February, 1987.
"I have an order I can read to you now Judge. Okay?
"judge ain Go on.
"a.d.a. klein County Court of Nassau County. In the Matter of the Application of Fred B. Klein for an order to compel Thomas Scalzo and Kathryn McCarty to submit to a chemical test, pursuant to VTL Section 1194-a.
"Upon the application of Fred B. Klein, sworn to February 8, *547 1987, for an order pursuant to Section 1194-a of the Vehicle and Traffic Law to require Thomas Scalzo and Kathryn McCarty to submit to a chemical test, and sufficient reason appearing therefor, it is,
"ordered, that the arrestees submit to a chemical test of the alcoholic or drug content of their blood, and it is further,
"ordered that a person authorized pursuant to section 1194 (7) of the Vehicle and Traffic Law, employed at Glen Cove Hospital withdraw a proper amount of blood from the arrestees, for the purpose of conducting such chemical test.
"Enter — Westbury, New York
"Date: 2/8/87
"Time: 5:27 a.m.
"Judge Stuart Ain
"Applicant, Fred Klein
"Is that ordered Judge?
"judge ain Not only is that ordered, but (inaudible)
"a.d.a. klein Okay, thank you very much, Your Honor.
"judge ain (Inaudible)
"a.d.a. klein Thank you.
"judge ain Bye, bye.”
Accordingly, the defendant’s motion to suppress the court-ordered blood test of the defendant on the grounds that the court order and supporting affidavit are defective is denied.
claim that court order and supporting affidavit were not made available to the defendant or the personnel performing the test
Defendant contends that the blood test results should also be suppressed on the ground that the order authorizing the blood taking was not made available to both the defendant and the personnel performing the chemical test. (See, People v Armstrong, 134 Misc 2d 800.)
This court does not follow the mandate of Armstrong (supra, at 803) that "It is incumbent upon the People to show that the order authorizing the chemical test was available to both the defendant and the personnel performing the chemical test.” The court finds of great significance the facts that the defendant does not dispute that a court order was obtained *548 and that he does not claim that he or anyone else demanded to see it.
The court further finds great significance in that section 1194-a of the Vehicle and Traffic Law does not require any showing of such an order to the defendant or the personnel performing the chemical test.
This factor is in clear contrast to CPL 690.50 which, in certain situations in the execution of search warrants for premises requires the showing of the warrant or a copy thereof to an occupant upon request.
That provision of CPL 690.50 is a logical requirement in view of the fact that such search warrant is limited in scope as to where and to what the issuing Judge has ordered and can be for a number of different places (e.g., house, garage, room, apartment, etc.) and for a number of different items (e.g., narcotics, stolen property, forged instruments, weapons, etc.).
However, under section 1194-a of the Vehicle ajad Traffic Law, the court order issued thereunder is for one purpose only, the taking of blood. In the opinion of this court, section 1194-a of the Vehicle and Traffic Law was enacted to ensure speed in a situation where time is of the utmost essence and to promptly take blood before the alcohol level has deteriorated and the crucial evidence is lost. (See, NY State Assembly mem in support of legis.)
Having found that a valid court order was issued in this case and that every second of time was of the utmost essence, this court follows the reasoning in People v Mahoney (58 NY2d 475, 480-481), where the Court of Appeals found that "The fact that the officers entered defendant’s house without actual possession of the search warrant, which they knew had been issued, in no way interfered with defendant’s right to be free from unreasonable governmental intrusions. The entry and search in this case was authorized by a magistrate prior to the entry and search occurring. Our Federal and State Constitutions require nothing more.”
Accordingly, the defendant’s motion to suppress the defendant’s blood test on this ground is also denied.
STATEMENTS
This court finds that at the time the defendant, while seated on a curb at the scene of the accident, made his initial statements to Officer McGivney as to his condition and his operation of his motor vehicle, he was not in custody, was not *549 detained in any way and that such limited questioning involved routine police investigation on the street at a time when the defendant was not a suspect or arrested for any crime or offense (see, People v Land, 33 AD2d 798) and that the statements were voluntary.
Thereafter, the defendant was transported by ambulance with no police personnel accompanying him to Glen Cove Hospital. Officer McGivney independently arrived at the hospital and found the defendant conscious, laying on a stretcher in one of the rooms in the emergency ward with his father present. At the hospital, Officer McGivney asked the defendant, "what had happened, whether he noticed the other car or anything.” The defendant then responded that "the first time he noticed it, it was in his lane. He swerved to avoid it. As he swerved, the car swerved.” And, the defendant also said that he, "originally was heading westbound on Bayville Avenue.”
At that point Officer McGivney asked the defendant if he was sure he was westbound or eastbound and was he headed toward his parents’ house or away from it. The defendant said that he "was heading towards his parents’ house which was eastbound”.
During the hospital conversations with the defendant, Officer McGivney noticed injuries on the defendant’s face and an odor of alcoholic beverage on his breath.
After leaving to speak with the operator of the other vehicle, Officer McGivney returned to the defendant and advised him that he was under arrest and no further questioning took place as to the head-on collision or the events surrounding it.
As to the statements made by the defendant at the hospital, this court finds that the defendant was not in custody, that the statements were voluntary, and that the matter clearly was still in the investigative stage. (People v Brown, 33 AD2d 735.)
This court further finds that the defendant’s statements were not obtained from him by any threats, force, improper conduct, undue pressure, by means of any promise or in violation of such rights as he derives from the Constitutions of this State and the United States.
Accordingly, the defendant’s motion to suppress his statements, as previously set forth, is denied.