THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS WHELAN, Appellant.

Second Department, March 25, 1991

314

## APPEARANCES OF COUNSEL

*Stephen P. Scaring, P. C. (Laurie S. Hershey* of counsel), for appellant.

*Denis Dillon, District Attorney (George Freed* and *Douglas Noll* of counsel), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

██ In this matter we are called upon to determine the adequacy of an application for an order pursuant to Vehicle and Traffic Law § 1194 (3) to compel the defendant to submit to a chemical test. Inasmuch as we find that the application was conclusory because it was based on hearsay information from sources who were not set forth and identified in the application, the results of the chemical test must be suppressed and the defendant's conviction for driving while intoxicated under the third count of the indictment (Vehicle and Traffic Law § 1192 [2] [now, driving while intoxicated; per se]) must be reversed and that count of the indictment dismissed. However, since there is overwhelming evidence to support the remaining three charges of which the defendant was convicted (i.e., driving while intoxicated [Vehicle and Traffic Law § 1192 (3)], assault in the third degree [Penal Law § 120.00 (3)], and violation of Vehicle and Traffic Law § 1128 [a]), any error in the admission of the test results was harmless as to those charges *(see, People v Crimmins,* 36 NY2d 230), and the defendant's conviction as to those charges is affirmed.

I

On March 12, 1988, at approximately 8:30 A.M., Todd Fliss was driving eastbound on the Southern State Parkway in the left-hand lane. The weather was sunny, the road was dry, and there was "no traffic".

At the same time, Hank Warrington, his son Timothy Warrington, and a friend, Michael Bradley, were also driving eastbound on the Southern State Parkway. Mr. Fliss and the three men in the Warrington vehicle observed the defendant's gray Honda automobile in front of them. The defendant's

vehicle changed lanes erratically from the far right lane to the middle lane more than 10 times. A few seconds before the accident, the defendant's vehicle cut in front of the Warrington vehicle and entered the center lane. Suddenly, the defendant's car made a drastic left turn, cutting in front of Mr. Fliss's vehicle in the left-hand lane. The defendant's car then traveled across the 34-foot-wide grass median and entered the left-hand lane of the westbound traffic, colliding head-on with a vehicle operated by Roger Fahey in that lane. As a result of the accident, Roger Fahey suffered a broken arm and leg and a blood clot in his lungs. He was hospitalized for nearly a month.

After the collision, Mr. Fliss went to assist the defendant, and found him "sleeping * * * [and] snoring". According to Mr. Fliss, there was a small amount of blood on the defendant's forehead, the "whole front seat of the car was covered with empty beer cans", and there was a "strong smell of alcohol" in the car.

Hank and Timothy Warrington also stopped to assist at the accident scene, and Hank Warrington smelled the odor of beer in the defendant's car. Hank testified that the defendant "told me I got to drive because he was getting tired". Mr. Warrington believed that the defendant was intoxicated because he was sleeping and snoring when first discovered, the car smelled of beer, the defendant drove erratically, and the defendant asked him to drive after the collision. Both Hank and Timothy Warrington observed beer cans in the defendant's car.

New York State Trooper Bruce Lynch was the first officer at the scene of the accident. He approached the defendant's vehicle and saw "numerous" beer cans "strewn throughout the vehicle". Trooper Lynch smelled a strong odor of alcohol on the defendant's breath.

Concluding from the circumstances that the defendant was intoxicated, Trooper Lynch gave the defendant his "DWI warnings"[1] in an ambulance at approximately 9:08 A.M. The defendant stated that he understood his rights but would not submit to a chemical test. At approximately 9:32 A.M., State

---

1. Vehicle and Traffic Law § 1194 (2) (b) mandates that prior to requesting an arrested defendant to consent to a chemical test, he must be advised that his license or permit to drive and any nonresident operating privilege shall be immediately suspended and subsequently revoked for refusal to submit to such chemical test whether or not he is found guilty of the charge for which he is arrested.

Trooper James Manton recited the "DWI warnings" to the defendant at a hospital, and the defendant again refused to submit to a chemical test

Trooper Lynch then contacted a Nassau County Assistant District Attorney and requested a judicial order to obtain blood from the defendant. At approximately 10:46 A.M., the defendant was again given his "DWI warnings" and again he refused to submit to a chemical test. At 10:58 A.M., Trooper Lynch obtained the order, and a physician withdrew a blood sample from the defendant at 11:05 A.M. The blood was placed in vacuum containers, and sealed and a forensic toxicologist subsequently determined that the defendant's blood sample contained .12% alcohol.

The defendant was indicted for assault in the second degree (Penal Law § 120.05 [4]), vehicular assault in the second degree (Penal Law § 120.03 [2]), driving while intoxicated (per se) (Vehicle and Traffic Law § 1192 [2]), driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), and violation of Vehicle and Traffic Law § 1128 (a). The jury acquitted him of assault in the second degree under the first count of the indictment, but found him guilty of assault in the third degree as a lesser included offense under count two, and guilty as charged under the third, fourth and fifth counts of the indictment.

## II

The principal contention advanced by the defendant on this appeal is that the results of the chemical blood test, indicating the presence of .12% alcohol in his blood, should have been suppressed. The blood sample was taken by authority of a telephonic order obtained from a County Court Judge pursuant to Vehicle and Traffic Law former § 1194-a (now Vehicle and Traffic Law § 1194 [3]).[2]

In *People v Moselle* (57 NY2d 97), the Court of Appeals held that blood samples could only be taken either on consent of the driver pursuant to the terms of Vehicle and Traffic Law former § 1194 (1) and (2), or by court order after the defendant has been arrested pursuant to CPL 240.40 (2) (b) (v), or by court order before arrest in accord with *Matter of Abe A.* (56

2. In 1988, Vehicle and Traffic Law §§ 1194 and 1194-a were consolidated. The provisions of Vehicle and Traffic Law former § 1194-a are now set forth in Vehicle and Traffic Law § 1194 (3) without any substantive changes.

NY2d 288). In short, the *Moselle* court determined that Vehicle and Traffic Law former § 1194 set forth the only methods permitted by the Legislature for the administration of chemical tests for determining blood alcohol content with respect to violations of Vehicle and Traffic Law former § 1192, and that CPL 240.40 (2) (b) (v) and *Matter of Abe A. (supra)* are the exclusive means of authorizing blood tests for use in other criminal prosecutions. These restrictions seriously impeded the utilization of blood tests where there was an accident involving death or serious injury. Moreover, due to the very nature of the test (i.e., to detect the presence of alcohol in the blood), the element of time was highly significant, for the longer it took to obtain the blood sample, the greater the likelihood that the percentage of alcohol in the blood would diminish. To overcome the limitations of *Moselle,* the Legislature enacted Vehicle and Traffic Law former § 1194-a (L 1983, ch 481), the salient provisions of which are now found in Vehicle and Traffic Law § 1194 (3), which permits an ex parte application for an order compelling the operator of a motor vehicle to submit to a chemical test of breath, blood, urine, or saliva if there is reasonable cause to believe that: (1) someone other than the operator in question was killed or suffered serious physical injury; (2) either the operator was driving while impaired or intoxicated, or, the operator was driving after consuming alcohol as established by a field breath test; (3) the operator was lawfully arrested; and (4) the operator refused or is unable to consent to such chemical test *(see,* Vehicle and Traffic Law § 1194 [3] [b] [1]-[4]; *People v Casadei,* 66 NY2d 846). Such an application may be made by a police officer or District Attorney as defined in CPL 1.20 (32) *(see,* Vehicle and Traffic Law § 1194 [3] [b]) to certain Justices or Judges in person or by means of electronic communication *(see,* Vehicle and Traffic Law § 1194 [3] [d] [1]).

As he did at the suppression hearing before the County Court, Nassau County, the defendant sets forth three purported violations of the procedures established by Vehicle and Traffic Law § 1194 (3) which he claims mandate suppression of the blood test results. We agree that one of these violations requires the granting of his request to suppress those results.

## A

First, the defendant contends that the application for a court order was inadequate under the statute because it was

based entirely on hearsay information obtained from unidentified sources. The transcription of the telephonic application reads as follows:

"A.D.A. GRENNAN This is Barry Grennan from the District Attorney's Office, if you'd swear me in I'm prepared to make an application to you for a search warrant.

"JUDGE BELFI This is Judge Donald E. Belfi, Nassau County Court Judge. Mr. Grennan do you solemnly swear to tell the truth, the whole truth and nothing but the truth in your application for a search warrant?

"A.D.A. GRENNAN I so swear. Ah, Judge Belfi, this is in the Matter of the Application of Barry W. Grennan for an order to compel Thomas Wehlan [sic] to submit to a chemical test, pursuant to VTL 1194-a.

"State of New York)
: ss
"County of Nassau)

"BARRY W. GRENNAN, being duly sworn, deposes and says:

"That I am a District Attorney as defined in CPL Section 1.20 (32) and at 0910 on March 12, 1988, Thomas Whelan was placed under lawful arrest for violating subdivisions of Section 1192 of the Vehicle and Traffic Law. I make this affidavit in support of an application for an order to compel the arrestee to submit to a chemical test, pursuant to section 1194-a of the Vehicle and Traffic Law.

"The arrestee was the operator of a motor vehicle, to wit: a 1984 Honda, registered in the State of New York, bearing license plate number YZY 401, and in the course of such operation a person other than the operator suffered severe physical injury as defined in Penal Law section 10.00 in that said person has severe head and internal injuries, is presently in critical condition and undergoing surgery at Nassau County Medical Center.

"Also, a breath test has been . . . Withdraw that last statement.

"Based on the totality of the following circumstances, there is reasonable cause to believe the arrestee was operating a motor vehicle in violation of section 1192 of the Vehicle and Traffic Law. He was eastbound in the westbound lane of Southern State Parkway. He was operating with a stong [sic] odor of alcohol and was observed to be erratically operating his motor vehicle on Southern State Parkway just west of Route 135 and collided with a westbound vehicle properly in the westbound lane.

"After being placed under lawful arrest, the arrestee re-

fused to submit to a chemical test in accordance with the provisions of Vehicle and Traffic Law section 1194, by refusing three times orally to submit to said test.

"Wherefore, it is respectfully requested that the Court issue an order requiring the arrestee to submit to a chemical test to determine the alcohol or drug content of his blood and directing the person designated by subdivision 7 of section 1192 of the Vehicle and Traffic Law to withdraw a blood sample from the arrestee for the purpose of determining the alcoholic or drug content thereof.

"Signed: Barry W. Grennan, Deponent.

"JUDGE BELFI Do you have an order prepared that you can telephonically communicate to me?

"A.D.A. GRENNAN Yes, sir. I have a proposed order. It reads as follows:

"County Court of Nassau County, County of Nassau. In the Matter of the Application of Barry W. Grennan for an order to compel Thomas Whelan to submit to a chemical test, pursuant to VTL 1194-a.

"Upon the application of Barry W. Grennan sworn to March 12, 1988, for an order pursuant to section 1194-a of the Vehicle and Traffic Law to require Thomas Whelan to submit to a chemical test, and sufficient reason appearing therefor, it is

"ORDERED that the arrestee submit to a chemical test of the alcoholic or drug content of his blood, and it is further

"ORDERED that a person authorized pursuant to section 1194 of the Vehicle and Traffic Law employed at Nassau County Medical Center, withdraw a proper amount of blood from the arrestee, for the purpose of conducting such chemical test.

"E N T E R

"Rockville Centre, New York

"And I would insert Judge, today's date and the present time is 10:58.

"JUDGE BELFI 10:58 a.m.

"A.D.A. GRENNAN A.M., Sir.

"JUDGE BELFI March 12, 1988

"A.D.A. GRENNAN Right".

As previously noted, Trooper Lynch, the first officer at the scene of the accident, noticed a strong smell of alcohol on the defendant's breath, heard him talk in a "slobbering manner"

and noticed numerous beer cans strewn throughout the defendant's car. Lynch had also spoken to Todd Fliss, Hank and Timothy Warrington, and Michael Bradley, all of whom had observed the defendant's erratic lane changes and final drastic turn across the eastbound highway and median before hitting Roger Fahey's car head-on in the westbound lane. Trooper Lynch advised the defendant of the "DWI warnings", and the defendant acknowledged his understanding of them. The Trooper placed the defendant under arrest and then called Assistant District Attorney Grennan and requested him to apply for a court order to draw blood.

Accordingly, it is obvious that Assistant District Attorney Grennan did not have personal knowledge of any of the matters set forth in his application. Rather, the facts as set forth in the application were based on the observations of Trooper Lynch and the observations of Fliss, the Warringtons, and Bradley as told to Trooper Lynch. Thus, it is clear that the application consisted entirely of hearsay and double hearsay. However, this fact does not render it defective. Search warrants based on hearsay information have long been held to be valid where there is "a substantial basis for crediting the hearsay statement" *(People v Hanlon,* 36 NY2d 549, 557). The procedure for evaluating the hearsay statements of informants involves the two-pronged *Aguilar-Spinelli* test *(see, Aguilar v Texas,* 378 US 108; *Spinelli v United States,* 393 US 410), which remains the controlling test to be applied in New York *(see, People v Griminger,* 71 NY2d 635). This court has recently held that probable cause to arrest may be established by double hearsay as long as each informant in the chain of narration passes the *Aguilar-Spinelli* test *(see, People v Greene,* 153 AD2d 439, 443-445, *cert denied* — US —, 111 S Ct 363). By parity of reasoning, an application under Vehicle and Traffic Law § 1194 (3) based on double hearsay would be valid if each informant passes the *Aguilar-Spinelli* test.

However, there is merit to the defendant's contention that the application herein was defective in that it failed to disclose that it consisted of hearsay and further failed to state the sources of the hearsay statements *(see, People v Walsh,* 137 Misc 2d 1073; *cf., People v Scalzo,* 139 Misc 2d 539, 545-547). In enacting the provisions of Vehicle and Traffic Law § 1194 (3), the Legislature was continuing the fundamental policy of having the adequacy of applications for search warrants *(see,* CPL art 690), orders affecting arrested defendants *(see,* CPL 240.40 [2] [b]), and orders affecting unarrested sus-

pects *(see, Matter of Abe A., supra)* passed upon by a neutral, detached Judge. An essential element in each of these procedures is that a Judge, rather than a prosecutor or a police officer, decides whether or not the documents submitted are sufficient to support the requested relief. By failing to set forth the sources of his hearsay information, Assistant District Attorney Grennan deprived the County Court of the opportunity to make the determinations required under the statute. In *People v Griminger* (71 NY2d 635, 639, *supra),* the Court of Appeals reaffirmed "that in evaluating hearsay information the Magistrate must find some minimum, reasonable showing that the informant was reliable and had a basis of knowledge". Relying on *People v Rodriguez* (52 NY2d 483), the court further stated: "Our courts should not 'blithely accept as true the accusations of an informant unless some good reason for doing so has been established' *(People v Rodriguez, supra,* at 489)" *(People v Griminger, supra,* at 639).

It appears that if Assistant District Attorney Grennan had informed the County Court that the factual information had been provided to him by Trooper Lynch, and that Lynch's statements were based on his own observations and upon statements given to him by Fliss, the Warringtons, and Bradley, the resulting order would have fully complied with the *Aguilar-Spinelli* requirements. However, since the source of the information was not provided to the court, the statutory mandate was not complied with, the ensuing order was defective, and the results of the blood test should have been suppressed. To hold otherwise in this case would sanction a procedure whereby an Assistant District Attorney would make the required evaluation of the informant. Such a procedure cannot be permitted, for while an Assistant District Attorney is an officer of the court, he is not the neutral, detached Magistrate contemplated by the statute.

## B

■ The defendant next contends that the failure of the People to comply literally with the provisions of Vehicle and Traffic Law § 1194 (3) as to the filing of a transcript of the oral application mandates suppression. We disagree.

Vehicle and Traffic Law § 1194 (3) (d) (3) provides in part: "If a voice recording device is used or a stenographic record made, the judge must have the record transcribed, certify to the accuracy of the transcription and file the original record

and transcription with the court within seventy-two hours of the issuance of the court order".

In this case, the order was issued at 10:58 A.M. on March 12, 1988. The transcript was certified by Judge Belfi and filed with the court at 1:29 P.M. on March 15, 1988, which was 74 hours and 31 minutes after the issuance of the order. It is obvious that the legislative intent underlying the foregoing statutory provision is twofold: (1) to ensure that the sworn testimony of the applicant and any supporting witnesses is recorded, thereby assuring the regularity of the application process, and (2) to preserve the application for appellate review (see, People v Taylor, 73 NY2d 683, 689; People v Peterson, 47 AD2d 431). It is equally obvious that both of these purposes have been fulfilled in this case, so that substantial rather than literal compliance with the statutory standards herein is sufficient (see, People v Taylor, supra, at 689; People v Sullivan, 56 NY2d 378; People v Brown, 40 NY2d 183, 186-188). Indeed, the facts of the present case demonstrate overwhelmingly that the legislative goals of the recordation requirement have been met. The indictment was returned on May 17, 1988, and it is obvious that the defendant's attorney had obtained a copy of the transcript of the oral application prior to June 28, 1988, since he annexed a photocopy of same to the defendant's omnibus motion of that date. The defendant was able to raise all of the issues relative to the application for the court order in a timely manner and suffered no prejudice or inconvenience by the failure to comply literally with the provisions of Vehicle and Traffic Law § 1194 (3) (d) (3). Hence, his contention that suppression is mandated on this ground is unavailing.

## C

■ The defendant's final claim relative to the propriety of the court order is that suppression is warranted because the order was not made available to the defendant or to medical personnel prior to the drawing of blood. The sole support for this contention is People v Armstrong (134 Misc 2d 800). Although such an availability requirement is nowhere expressed in Vehicle and Traffic Law § 1194 (3) (cf., CPL 690.50 [3] which expressly states that a police officer executing a search warrant must give notice of his authority and must show a copy of the warrant if requested by a person to be searched), the Armstrong court reasoned that the requirement

of Vehicle and Traffic Law former § 1194-a (3) (d) (now Vehicle and Traffic Law § 1194 [3] [d] [4]) that a written order be prepared could only mean that the order *must* be shown to the arrestee and to medical personnel before blood is drawn and that failure to so exhibit it requires suppression of the test results. Conversely, in *People v Scalzo* (139 Misc 2d 539, 547-548, *supra*), the same argument was made and rejected on the grounds that (1) Vehicle and Traffic Law former § 1194-a did not require the exhibition of the order, (2) there was no evidence in that case that the defendant or any medical personnel requested to see the order; and (3) the need for promptness in taking blood creates an exigency which excuses the actual production of the order *(see, People v Mahoney,* 58 NY2d 475, 480-481). We find the reasoning of *People v Scalzo (supra),* which rejected the argument advanced by the defendant herein, far more persuasive than that in *People v Armstrong (supra)* and hold that there was no requirement in this case to show the court order to the defendant or medical personnel before blood was extracted.[3]

### III

The final point made by the defendant is that the judgment of conviction must be reversed and a new trial granted because of an alleged violation by the media of a limited court order permitting audio-visual coverage of the trial.

On May 22, 1989, following applications by News 12 Long Island (WABC-TV) and Newsday for permission to videotape and photograph the proceedings pursuant to Judiciary Law § 218 and the Rules of the Chief Administrator of the Courts (22 NYCRR 131.3), the County Court granted the applications and issued an order setting forth 11 specific limitations. Of particular concern on this appeal was the following limitation: "3. No coverage of the jury including alternates or of any individual juror in the courtroom, or during recess or while going to or from the courthouse shall be permitted".

The audio-visual coverage was not permitted to begin until the jury and alternates had been selected. Opening statements were heard on May 24, 1989, and the trial proceeded unevent-

---

**3.** We are disturbed by the failure of the defendant's counsel herein to refer in his brief to *People v Scalzo (supra),* since he was the attorney of record for Scalzo and had to know of that decision. "The function of an appellate brief is to assist, not mislead, the court" *(Matter of Cicio v City of New York,* 98 AD2d 38, 40).

fully until sometime in the evening of May 30, 1989. At that time, the jurors had been recharged in response to a question they had submitted to the court. After the jury resumed deliberations at 5:49 P.M., defense counsel moved for a mistrial on the grounds that the still photographer from Newsday had taken pictures of the jury as they were leaving the courtroom. The photographer denied taking any photographs of jurors. The film was later developed and in fact there were no photographs of any of the jurors. While continuing to press his motion for a mistrial, the defense attorney expressly stated that he did not want the jurors questioned about this incident.

■ On this appeal, he argues that there might have been some type of prejudice to the defendant arising from a perception (which he now concedes would have been false) that they were photographed. Just what this prejudice might be remains a mystery. Inasmuch as the defendant's actions precluded the making of a record as to this issue and his present contention is wholly speculative, appellate review has been foreclosed *(see, People v Fernandez,* 67 NY2d 686).

## IV

■ Most of the defendant's claims on this appeal concern his conviction for driving while intoxicated (per se) (Vehicle and Traffic Law § 1192 [2]) under the third count of the indictment, which charged him with operating a vehicle while having a blood alcohol content in excess of .10%. Since we find that the results of the blood test must be suppressed, the conviction of the third count must be reversed and that count must be dismissed. However, the evidence of the defendant's guilt of driving while intoxicated (Vehicle and Traffic Law § 1192 [3]) under the fourth count was so overwhelming that it should not be disturbed. The defendant's erratic driving, "slobbering" speech, inappropriate remarks, and refusal to take a breathalyzer test, as well as the strong smell of alcohol on his breath and in his car and the numerous empty beer cans observed in his vehicle amply support the jury's verdict *(see, People v Jacquin,* 124 AD2d 594, *affd* 71 NY2d 825; *People v Nosek,* 160 AD2d 898). Similarly, the evidence overwhelmingly supports the convictions for reckless assault and violation of Vehicle and Traffic Law § 1128 (a). Accordingly, we find that the erroneous receipt into evidence of the blood test results was harmless as to these counts *(see, People v Crimmins,* 36 NY2d 230).

EIBER, HARWOOD and BALLETTA, JJ., concur.

Ordered that the judgment is modified, on the law, by reversing the conviction for driving while intoxicated under the third count of the indictment, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.