■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS SCALZO, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Goodman, J.), rendered March 6, 1989, convicting him of criminally negligent homicide, vehicular manslaughter in the second degree (two counts), vehicular assault in the second degree (two counts), assault in the third degree and operating a motor vehicle while under the influence of alcohol (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence *(see, People v Scalzo,* 139 Misc 2d 539).

Ordered that the judgment is reversed, on the law, and a new trial is ordered. No questions of fact have been raised or considered.

The various crimes with which the defendant was charged arose from a fatal motor vehicle accident involving his car and one driven by Kathryn McCarty, as a result of which McCarty was seriously injured and her fiance and only passenger was killed. Because both the defendant and Ms. McCarty smelled of alcohol at the time they were observed by the police in the emergency room to which each was taken, both individuals were asked to provide a blood sample for chemical analysis. Because the defendant refused to do so and McCarty either refused or was not lucid at the time of the request, the police obtained a court order pursuant to Vehicle and Traffic Law § 1194-a, compelling both individuals to submit to a chemical test. As a result of her test results, McCarty was not charged.

At the trial, the People's accident reconstruction expert testified that the accident resulted from a head-on collision and that just prior to the impact, the defendant had been

driving in the wrong direction in the westbound lane of the roadway. A police chemist testified that the two gas chromatograph tests and one cell diffusion test performed on the defendant's blood sample produced blood alcohol readings of .094, .095 and .095 respectively or slightly below the .10 statutory level of intoxication. The witness acknowledged however that the defendant's blood sample was not preserved for additional analyses and that Ms. McCarty's sample was destroyed after it was found to produce a reading of only .008. Based on the blood alcohol content in the defendant's blood sample and the number of hours that had elapsed from the time of the accident, the chief toxicologist for the Nassau County Medical Examiner's Office testified that at the time of the accident, the blood alcohol content of the defendant was somewhere between .102 and .145 or somewhat higher than the statutory level of intoxication.

On appeal, the defendant maintains that the results of the chemical tests performed on his blood sample should have been suppressed, *inter alia,* because his arrest was not predicated on reasonable cause to believe that he was driving while legally impaired or intoxicated. We disagree.

As noted by the trial court in its decision *(see, People v Scalzo,* 139 Misc 2d 539, *supra)* the odor of alcohol on the defendant's breath detected by the arresting officer shortly after the accident taken together with the head-on nature of the collision and the defendant's apparent confusion as to the direction in which he was driving just prior to the collision provided probable cause to believe that he was driving while intoxicated or impaired. We also disagree with the defendant's contention that suppression was warranted because the affidavit supporting the court order was defective. Contrary to the defendant's assertion, the allegations contained in the affidavit were not conclusory in nature. Finally, there is no merit to the defendant's contention that suppression was warranted because the court order was not served on him or the medical personnel who performed the blood test. The controlling provision of the statute, Vehicle and Traffic Law § 1194-a, does not contain any such requirement.

We nevertheless conclude that reversal is warranted in this case because of the trial court's failure to impose even the most minimal sanctions on the People for their failure to preserve the defendant's blood sample. In fashioning an "appropriate" response to the prosecutor's failure to preserve evidence *(see,* CPL 240.70 [1]), the overriding concern must be to eliminate any prejudice to the defendant while protecting

the interests of society *(see, People v Kelly,* 62 NY2d 516, 520). The fact that the People lose evidence through inadvertence does not excuse the loss *(see, People v Haupt,* 71 NY2d 929). In the instant case, the court's instruction which suggested that the failure to preserve the sample was of "no consequence" clearly did not even attempt to eliminate the prejudice caused the defendant. We consider this failure particularly grave under the instant set of circumstances where the chemical test performed on the sample of the defendant's blood yielded a blood alcohol content that was below the statutory level of intoxication.

In light of our determination, we do not reach the other arguments raised by the defendant as to the need for reversal. Harwood, J. P., Eiber and Balletta, JJ., concur.

O'Brien, J., dissents and votes to affirm the judgment appealed from, with the following memorandum: At approximately 2:20 A.M. on February 8, 1987, a vehicle operated by the defendant collided with a vehicle operated by Kathryn McCarty. A passenger in the McCarty vehicle was killed. Pursuant to court order, blood samples were taken at approximately 6:00 A.M. from both drivers at the hospitals where they were being treated. Chemical analysis of the defendant's blood sample revealed a blood alcohol content of .095 of one percent. Chemical analysis of McCarty's blood sample revealed a blood alcohol content of .008 of one percent. The defendant was convicted of vehicular manslaughter in the second degree, and certain lesser charges, including operating a motor vehicle while under the influence of alcohol, in connection with the passenger's death and the injuries to McCarty.

On appeal, the defendant contends that the court erred in failing to give the following adverse inference charge in connection with the blood alcohol content test results which were admitted into evidence: "You have heard evidence regarding tests on the defendant's blood and on that of the driver of the other vehicle, Ms. McCarty. The prosecution however failed to preserve these blood samples for independent testing by the defense. Thus you have heard no evidence from any defense experts with respect to blood tests of either party.

"Because the defense was unable to conduct independent testing due to the prosecution's failure to preserve the blood samples, I instruct you that you may not consider the prosecution's blood test evidence, either of the defendant's blood or of Ms. McCarty's blood. You are to disregard all testimony and evidence in this respect, as if it were never introduced in this

trial. Moreover, you may infer that if such samples had been tested independently by defense experts, entirely different blood/alcohol readings may have been arrived at".

The trial court declined to give the requested charge, and instead gave the following charge:

"Now, during the course of the trial, you have heard testimony concerning the blood sample of Kathryn McCarty, which the People have been unable to produce in Court as an exhibit because it has been destroyed and you have heard testimony that after the initial testing of the Defendant's blood, the sample was unable to be further tested.

"While it is necessary for the People to establish beyond a reasonable doubt the existence of such blood samples, at the time in question, I charge you that if you find beyond a reasonable doubt the existence of such blood samples and that they were properly tested at the time in question, then the fact that the actual blood sample of Kathryn McCarty was not produced herein in court, and that the blood sample of the defendant could not be further tested, is of no consequence".

The People have a duty to preserve evidence until a request for disclosure is made. If evidence is lost, the People have the burden of establishing that diligent, good faith efforts were made to prevent the loss, otherwise sanctions will be imposed (see, People v Kelly, 62 NY2d 516). I find that the court was not required to impose the sanction of an adverse inference charge under the circumstances of this case.

Addressing first the issue of the defendant's blood sample, I note that since the actual blood sample was produced in court, the claim that the People failed to preserve evidence refers solely to the condition of the sample. The defendant based his request for an adverse inference charge on the premise that the People failed to preserve his blood sample in a form suitable for further testing by an independent expert. Testimony adduced at the trial revealed that a preservative was added to the sample in the police laboratory after the initial blood alcohol content test result was obtained, which rendered the sample unsuitable for testing for *drugs*. However, whether or not the defendant's blood showed evidence of *drug* use was irrelevant because the charges against him were based solely on alcohol intoxication. No testimony was elicited that the sample could not have been tested further for *blood alcohol level* by a defense expert at some point prior to the trial. I refuse to speculate as to whether such a test would have been possible if a timely request had been made or whether the

results would have been exculpatory. It is significant that the defendant moved prior to the trial to suppress the blood alcohol content test results on the ground that it was unlawfully obtained but did not seek to suppress the test results on the ground that the sample had been destroyed or rendered unsuitable for independent testing. On this record, therefore, the trial court did not err in refusing to instruct the jury that it could draw an adverse inference against the People *(see, People v Austin,* 152 AD2d 590; *cf., People v Allgood,* 70 NY2d 812; *People v Alvarez,* 70 NY2d 375).

With respect to McCarty's blood sample, the evidence adduced at trial established that it was also rendered unsuitable for *drug* testing when a preservative was added following the blood alcohol content test and that the blood sample itself was destroyed by the police in March 1988, about eight months prior to the defendant's trial. During the trial, the defense counsel stated that he had received the police laboratory report on McCarty's blood sample but had not pursued an independent test upon learning that the sample was not suitable for further testing. The officer who destroyed the sample testified at the trial that his records did not indicate that there was a request for an independent analysis of that sample or that the sample was connected to the defendant's case. I find that, having failed to pursue his request for the blood sample, the defendant was not entitled to an adverse inference charge at the trial based on the destruction of the sample *(see, People v Allgood, supra; People v Kelly,* 62 NY2d 516, *supra).*

Furthermore, I reject the defendant's contention that he was entitled to an adverse inference charge because the People failed to preserve the blood sample in a form suitable for further testing at the time of his initial discovery request. There was no evidence adduced at the trial that the sample could not have been independently tested for blood alcohol content, although there was testimony that the sample could not be tested for drugs because of the preservative added in the police laboratory. Where the defendant claims that lost evidence deprived him of a fair trial, the court must consider such factors as the proof available at trial, the significance of the missing evidence and whether the loss was intentional or inadvertent *(see, People v Haupt,* 71 NY2d 929). The defendant argues that this missing evidence became important during the trial when it was revealed for the first time that McCarty had taken medication on the evening of the accident. However, the police are not under a duty to preserve all material

that might be of conceivable evidentiary significance, especially when the exculpatory value of the evidence is purely speculative *(see, Arizona v Youngblood,* 488 US 51; *People v Scattareggia,* 152 AD2d 679). There was no showing of bad faith on the part of the police *(see, Arizona v Youngblood, supra; People v Haupt, supra; People v Ramos,* 147 AD2d 718). Furthermore, the defendant was permitted to question the prosecution's expert witness as to the effects of McCarty's medication in combination with alcohol, and referred to the absence of the blood sample in summation.

The defendant next contends that the court erred in permitting a toxicologist from the medical examiner's office to testify that, in his opinion, the defendant's blood alcohol content was between .102 and .145 of one percent at the time of the accident, using a method of retrograde extrapolation based on the defendant's actual blood alcohol content when he was tested approximately three and a half hours after the accident. The defendant's contentions with respect to this testimony are unpreserved for appellate review as they were not specifically raised at trial. In any event, I find the contentions to be without merit.

The admissibility of expert testimony is generally a matter committed to the trial court's discretion *(see, People v Cronin,* 60 NY2d 430). I find no error in the court's decision to permit the toxicologist to testify that alcohol is metabolized at a rate of .015 percent per hour and to give his opinion as to the defendant's blood alcohol content based on such factors as the defendant's weight, whether the alcohol was absorbed on a full or empty stomach, and the time that elapsed between the accident and the taking of his blood sample.

At the time of the defendant's accident, Vehicle and Traffic Law former § 1192 (2) stated "No person shall operate a motor vehicle while he has .10 of one per centum or more by weight of alcohol in his blood as shown by chemical analysis of his blood". The defendant points out that Vehicle and Traffic Law § 1192 (2) was amended in November, 1988 (L 1988, ch 47, § 18) to provide that operation of a motor vehicle with a blood alcohol content .10 of one percent constitutes driving while intoxicated *per se.* According to the memorandum of the State Executive Department to the Legislature, the statute was changed to prevent a defendant from introducing expert testimony that, although his blood alcohol content was .10 of one percent at the time of the chemical analysis, it was lower at the time he was involved in the accident *(see,* Mem of State Exec Dept, L 1988, ch 47, McKinney's 1988 Session Laws of

NY, at 1938-1941). The defendant argues that since the statute was changed to prevent a defendant from using such evidence, it was unfair to permit the People to rely on expert testimony to establish that his blood alcohol content was actually higher at the time of the accident. We need not consider this argument nor whether the defendant would have been permitted to introduce such evidence under the amended statute, because the defendant was prosecuted under the former statute, and the jury was instructed on the elements of the former statute. Under the applicable case law, the defendant could have offered expert testimony that his blood alcohol content was actually lower at the time of the accident than it was when he was tested over three hours later *(see, People v Mertz,* 68 NY2d 136). There therefore was no unfairness in permitting the People to introduce expert testimony that his blood alcohol content was higher at the time of the accident.

The defendant's remaining contentions, including his challenge to the suppression court's decision *(People v Whelan,* 165 AD2d 313; *People v Scalzo,* 139 Misc 2d 539), are either without merit or are unpreserved for review.